## Preferential Treatment of War Veterans. No. 2

RUTTER, Deputy Attorney General, February 15, 1940. —By your letter of January 8, 1940, this department has been requested to advise you concerning certain aspects and effects of the Acts of June 27, 1939, P. L. 1198, 51 PS §491.1 et seq., and April 12, 1939, P. L. 27, 51 PS §481. Both of these statutes relate to preferential appointment and employment by the Commonwealth and its political subdivisions of honorably discharged persons who were engaged in the military or naval service of the United States during any war wherein that Nation participated.

Specifically, you desire advice upon the following questions:

1. Are eligibility lists, established by civil service examinations held prior to January 1, 1940, subject to the Act of June 27, 1939, P. L. 1198, supra?

2. Are soldiers, as defined in said act, entitled in civil service examinations to any credit other than the 10 percent stipulated in the act?

3. Are soldiers, as defined in said act, to be preferred over other persons, in appointment to public positions, despite the fact that such soldiers' standings on an eligibility list established by civil service examinations are, with the 10 percent added, lower than the standings of other persons on such lists?

4. Is the Pennsylvania Liquor Control Board subject to the Act of April 12, 1939, P. L. 27, supra; and, if so, to what extent?

At the risk of unduly extending this opinion, we deem it advisable to review the subject of statutory preferential treatment of United States war veterans in public employment in the Commonwealth.

Prior to the World War of 1914-1918, the Act of May 19, 1887, P. L. 132, 51 PS §481, enacted that honorably discharged Union veterans of the Civil War should be preferred for appointment and employment in all public departments and works of the Commonwealth, provided such veterans possessed the other requisite qualifications. The Act of April 12, 1939, P. L. 27, supra, one of the two statutes whereof you inquire, amended the title and body of the Act of 1887, and actually completely supplemented and supplied it. The effect of the Act of April 12, 1939, is to extend the benefits of the Act of 1887 to United States veterans of all wars wherein the Nation engaged.

The Civil Service Act of March 5, 1906, P. L. 83, repealed by the Act of June 25, 1919, P. L. 581, exempted honorably discharged United States veterans of wars of the country, and their families, from its provisions. This exemption was declared unconstitutional in Wood v. Philadelphia, 46 Pa. Superior Ct. 573 (1911), on the ground that the act, with the exempting proviso, was class legislation, but that without the objectionable proviso it was valid.

Section 3 of the Act of June 12, 1919, P. L. 444, 53 PS §303, allowed preference to be given in the appointment of county, city, and borough employes, to honorably discharged veterans who had served the United States in war time, provided such veterans passed the required civil service examinations, and notwithstanding the fact that such veterans might not stand among the four highest on an eligibility list or come within the age limitations fixed by law or by the rules and regulations of any board or commission administering civil service requirements. This Act of 1919 was repealed, insofar as it related to third class cities, by The Third Class City Law of June 23, 1931, P. L. 932, 52 PS §12198-101 et seq.

The Act of July 16, 1917, P. L. 1002, decreed that preference be given to honorably discharged veterans who had served the United States in time of war, in the appointment of persons to the engineering and electrical departments, and to the position of building inspector, in third class cities, provided such veterans fulfilled the other requisites of the act. This legislation was repealed by The Third Class City Law, supra.

Sections 1 and 2 of the Act of May 11, 1923, P. L. 203, 51 PS §§485, 486, provided that honorably discharged veterans who had been engaged in the military or naval service of the United States during any of its wars should be given credit for such service by being marked 15 per-cent perfect in any civil service examination before the quality or contents of such examination were considered. This act was repealed, insofar as applicable to third class cities, by The Third Class City Law, supra.

Article XIX, sec. 14, of the Act of June 25, 1919, P. L. 581, 53 PS §3334, provided that, in civil service examinations for employment in first class cities, honorably discharged soldiers, sailors, and marines who had served as such under the United States or in the National Guard of the Commonwealth should be given full credit for their experience in such service.

Second class cities are adverted to by section 1 of the Act of May 23, 1907, P. L. 206, as amended by section 1 of the Act of May 8, 1919, P. L. 118, 53 PS §9361. This legislation provides that honorably discharged veterans who served the United States during the Civil War, or the United States or its Allies during the former's participation in the World War of 1914-18, should be given preference in civil service appointments, provided such veterans possess equal qualifications and eligibility with persons over whom they are preferred.

Third class cities are governed by The Third Class City Law, supra, which provides in section 4405, art. XLIV thereof, 53 PS §12198-4405, that when any person who was engaged in the military or naval service of the United

States during any war of the Nation, and who has an honorable discharge from such service, shall take a civil service examination for appointment or promotion, his examination shall be marked 15 percent perfect before the quality or contents thereof shall be considered; and the total of his actual grade, plus the added percentage, shall determine his final grade and standing on the eligibility list.

Section 4406 of The Third Class City Law, 53 PS §12198-4406, outlines the compilation of an eligibility list of those who have passed the civil service examinations. Section 4407, 53 PS §12198-4407, provides that amongst those possessing eligibility for appointment, preference shall be given to honorably discharged sailors and soldiers who served the United States in war; and that preference may be given to honorably discharged soldiers, sailors, and marines, who served the United States in war, if such soldiers, sailors, and marines have passed the required examinations, notwithstanding the fact that their names are not among the four standing highest on the eligible list. Further, such appointments of soldiers, sailors, and marines may be made without regard to age limitations provided by law or by rules and regulations of any board or commission having charge of civil service in counties, boroughs, or cities.

Section 19 of the State Board of Housing Law of June 5, 1937, P. L. 1705, 35 PS §1519, provides that honorably discharged persons who were engaged in the miltary or naval service of the United States in any war wherein the Nation took part, should be rated, in examinations for positions, five percent over and above the rating fixed for the quality and character of the examinations, and such persons as have been wounded or disabled as a result of such service should be given an additional five percent in rating, provided they are otherwise qualified to do the work for which they are examined.

The Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended by the Act of May

18, 1937, P. L. 658, 43 PS §768, provides that persons taking civil service examinations for employment under the Unemployment Compensation Law shall, if honorably discharged from the military or naval service of the United States, after having been in any war in which the Nation participated, be given an additional rating of five percent in such examinations. If such veterans were disabled by wounds or otherwise, they shall be given a further and additional five percent in the final rating, provided their said disability does not prevent them from performing the work for which they were examined.

The Administrative Code of April 9, 1929, P. L. 177, as amended by section 3 of the Act of June 24, 1937, P. L. 2003, 71 PS §667, relating to the Public Assistance Law of June 24, 1937, P. L. 2051, provides that persons taking civil service examinations who are honorably discharged veterans of the military or naval service of the United States, and who served during any war wherein the Nation was engaged, shall receive an additional five percent for such service; and if such veterans were wounded or disabled in such service, they shall receive a further and additional five percent in their civil service ratings.

The provisions of The Third Class City Law, supra, 53 PS §12198-4405 to 12198-4407, came under the scrutiny of the Supreme Court in the case of Commonwealth ex rel., to use, et al. v. Schmid, 333 Pa. 568 (1938), wherein the constitutionality of the preferences accorded war veterans in said statutory provisions was questioned. The court elaborately reviewed legislation preferring war veterans in public employment, and remarked that it had not theretofore passed upon the validity of such laws.

Setting out to analyze the types of preferential statutes, the Supreme Court, in the Schmid case, supra, found that they fell into three classifications.

1. Those giving preference to veterans where no examination is required, but preserving to the appointing power its discretion, and those preferring veterans so long as the veterans possess qualifications which are reason-

able, or equal to those of other candidates; these have been held valid.

2. Those ostensibly mandatory and not expressly requiring that veterans be reasonably qualified for the position, or be equal to other candidates in their merits: these have been upheld by implying in the statutes a requisite that the preferred veterans be reasonably qualified.

3. Those dealing with civil service requirements. This last category falls into several subdivisions: (*a*) Statutes giving veterans an absolute or discretionary preference regardless of their standing on an eligible list; (*b*) statutes wholly exempting veterans from examinations; (*c*) statutes giving veterans additional credits on examination or, in the alternative, lowering their passing requirements; and (*d*) those giving veterans extra credits after they have passed the regular examinations and have become eligible.

Where the legislation prefers veterans who have already passed the regular examination, it has been held constitutional; as has also that placing veterans, who have passed examinations, at the top of eligible lists. Statutes preferring veterans who have passed examinations, whether the preference is mandatory or discretionary, have been declared valid constitutionally.

The conclusion of the Supreme Court in the Schmid case, supra, is thus stated, at page 577:

"Our conclusion from these decisions is that, so long as the statute requires passage of the examination, a veteran may constitutionally be preferred over non-veterans whether the statute be mandatory or directory. In either case the minimum qualification for appointment is success in an examination. Its passage satisfies the requirement that appointments of public employees be made only of persons reasonably fitted for the position.

"There can be no objection to the provision of section 4407 [of The Third Class City Law, 53 PS §12198-4407] which *permits* a preference of any veteran on the eligible

list. The provision that those in the first four of the eligible list *shall be preferred* . . . must, however, be construed to be mandatory, with the exception that the appointing power need not select such veteran if it is found on a fair basis that he is morally or physically unfit to be employed. . . .

"But statutes completely exempting veterans from taking the customary examinations for civil service positions have been ordinarily held unconstitutional since they do not require that the appointees be fit for the position. [Such a situation was that dealt with in Wood v. Philadelphia, supra]. . . .

"There is an exception to this rule against exemption from examination where the statute is not mandatory but merely discretionary in permitting such appointment, and where the nature of the position is such that it does not require an examination to establish qualification. . . .

"A provision granting veterans a lower passing grade than other candidates, or, what is an equivalent provision, a credit to veterans of a specific number of points aiding them in passing an examination, is in parity with exemption from examination; these provisions will be held unconstitutional. . . .

"In several jurisdictions the statutes have provided for a credit of a specific number of points to veterans *who pass the examination,* which credit aids their order or standing in the eligible lists. . . . Their propriety rests on their reasonableness. . . .

"It therefore clearly appears that the decisions of other states condemn the provision of section 4405 [of The Third Class City Law, 53 PS §12198-4405] giving fifteen per cent credit in advance to veterans as unconstitutional. . . . We do not hold that no credit can be given to veterans *who have passed examinations* in addition to the preference when on the eligible list, but the present grading is given to those who do not pass the examination.

". . . We do not pass on the age and other provisions of the act [The Third Class City Law]. The preference feature is otherwise sustained as constitutional, while the fifteen per cent provision is held illegal."

The portion of section 4407 of The Third Class City Law, 53 PS §12198-4407, that preferential appointments of soldiers, sailors, and marines who have been honorably discharged after service during war in the Army or Navy of the United States may be made without regard to age limitations provided by law or by rules and regulations of civil service boards or commissions of cities, boroughs, and counties, expressly not passed upon in the Schmid case, supra, was specifically declared unconstitutional in the recent case of Carney et al. v. Lowe et al., 336 Pa. 289, decided by the Supreme Court on November 27, 1939.

It is not the proper function of this department to pass upon the constitutionality of legislation: Dairy & Food Commissioner's Office, 32 Pa. C. C. 520, Opinions of Attorney General, 1905-1906, page 398 (1906) ; Use of Prisons by State Constabulary, 13 Dauph. 49; Opinions of Attorney General, 1909-1910, page 264 (1909) ; Mother's Pensions, 41 Pa. C. C. 216; Opinions of Attorney General, 1913-1914, page 47 (1913) ; and see Commonweatlh ex rel. v. Lewis, etc., 282 Pa. 306 (1925). Nor does this opinion purport to pass upon the constitutional validity of the Acts of June 27, 1939, P. L. 1198, and April 12, 1939, P. L. 27, supra, whereof you inquire; although it is of interest and significance that both acts are mentioned by the Supreme Court in Carney et al. v. Lowe et al., supra, in footnotes 2 and 3. It has been prolonged, however, in an effort fully to advise you and all administrative departments, boards, commissions, officers, and political subdivisions of the Commonwealth of the general, and in your case, specific, effects of the subject legislation. The historical background and the judicial travels of legislation in pari materia lend aid in a proper under-

standing of the subject. And now, as all writers of opinions ultimately must, we come back to your inquires.

For reasons of logical approach, we shall answer your questions in reverse order. Your question no. 4 inquires whether the Pennsylvania Liquor Control Board is subject to the Act of April 12, 1939, P. L. 27, and if so, in what respect. First of all, it must be noted that said act and that of June 27, 1939, P. L. 1198, whereof you also inquire, were enacted during the same session of the legislature.

"Whenever the provisions of two or more laws passed during the same session of the Legislature are irreconcilable, the law latest in date of final enactment, irrespective of its effective date, shall prevail from the time it becomes effective . . .": Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 65, 46 PS §565.

The two statutes have different effective dates. The Act of April 12, 1939, became effective from and after September 1, 1939: Statutory Construction Act, art. I, sec. 4, 46 PS §504. The Act of June 27, 1939, by its own terms (section 7), became effective January 1, 1940. The two acts are not irreconcilable, and as a result, could stand together, for they are in pari materia. However, the Act of June 27, 1939, expressly declares, in section 5, 51 PS §491.5:

"This act shall be construed as being the exclusive law applying to the Commonwealth and its political subdivisions in giving preference to soldiers [as defined in said act] in appointment to public position."

Since the Act of June 27, 1939, is comprehensive, and includes the substance of the Act of April 12, 1939; since the former act by its own terms purports to be "the exclusive law"; and even though the two acts are in pari materia, see Statutory Construction Act, sec. 62, art. IV, 46 PS §562, and Palmer's Appeal, 307 Pa. 426, at 430, 431 (1932); nevertheless:

"Whenever a law purports to be a revision of all laws upon a particular subject, or sets up a general or ex-

clusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject": Statutory Construction Act, art. VII, sec. 91, 46 PS §591.

And since it is quite clear, also, that no violence would be done the legislative will: see Statutory Construction Act, art. IV, sec. 52, 46 PS §552; by holding that the Act of April 12, 1939, was repealed, as of January 1, 1940, by the Act of June 27, 1939, it is our opinion that it was so repealed. Consequently, the Act of April 12, 1939, P. L. 27, is no longer effective.

But, in the interval between September 1, 1939, the date the Act of April 12, 1939, became effective, and January 1, 1940, the date the Act of June 27, 1939, became effective, the former act was law, and fully in force. This act follows:

"Whereas, There are no laws in the State of Pennsylvania giving preference of appointment or employment to honorably discharged soldiers, sailors, marines and nurses, who fought for the United States in the wars in which the United States has engaged.

"And Whereas, The sacrifices, trials and sufferings, they have endured, entitle them to special recognition; therefore,

"Section 1. Be it enacted, &c., That, in every public department and upon all public works of the State of Pennsylvania, honorably discharged soldiers, sailors, marines and nurses, who were engaged in the military or naval service of the United States during any war in which the United States engaged, shall be preferred for appointment and employment; age, loss of limb, or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the other requisite qualifications."

To borrow from our Formal Opinion No. 315, dated January 31, 1940:

"The earlier Act of April 12, 1939, P. L. 27, which is controlling between September 1, 1939, and January 1, 1940, has no application to our civil service systems. . . . The Act of May 19, 1887, as amended [by the Act of April 12, 1939], applies to appointments in the State service generally, and does not apply to the State departments which are subject to civil service."

And, since the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted and amended by the Act of June 16, 1937, P. L. 1762, 47 PS §744-1 et seq., governs the Pennsylvania Liquor Control Board; and since said act sets up a complete civil service system for the selection of the board's employes in section 302, art. III, as amended, 47 PS §744-302; the Act of April 12, 1939, did not apply to the board between September 1, 1939, and January 1, 1940; and, since said act was repealed as of January 1, 1940, as hereinbefore pointed out, said act never applied to the board.

Your question no. 3 inquires whether soldiers, as defined in the Act of June 27, 1939, P. L. 1198, are to be given preference over nonsoldiers in appointment to public positions, notwithstanding the fact that the standing of such soldiers on an eligible list established by civil service examinations is, with the 10 percent added by the act, lower than the standing on said list of nonsoldiers. The answer to this question is to be found in the act.

Section 4 of the act reads in part:

"Whenever any soldier possesses the requisite qualifications and his name appears on any eligible list certified or furnished, as the result of any civil service examination, the appointing power, in making an appointment to a public position, *shall* give preference to such soldier *notwithstanding that his name does not stand highest on the eligible list.*" (Italics supplied.)

Therefore, so long as a soldier has passed the examination without the aid of the statutory 10 percent; and so long as he is, on a fair basis, morally and physically fit to

be employed; he must be appointed to the position sought, even though he does not stand highest, or among the highest, on the eligible list, and regardless of whether the statutory ten percent has been added to his passing grade or not.

The answer to your question no. 2: Are soldiers, as defined in the Act of June 27, 1939, entitled to credit in civil service examinations other than the said statutory ten percent? is: No. The reason for this is that the said act itself provides in section 2 thereof:

"When any soldier shall take any civil service examination for a public position . . . he shall be given credit, *in the manner hereinafter provided. . . .*" (Italics supplied.)

Your question no. 1 inquires whether eligibility lists, established by civil service examinations held prior to January 1, 1940, are subject to the Act of June 27, 1939. In our opinion such lists are subject to the act. Regardless of whether the lists were established before January 1, 1940, or subsequent thereto, *when an appointment therefrom is made after January 1, 1940, such appointment must be made in accordance with the act.*

We are, therefore, of the opinion, and you are accordingly advised, that:

1. Eligibility lists, established by civil service examinations held prior to January 1, 1940, are, insofar as the making appointments to public positions therefrom is concerned, subject to the Act of June 27, 1939, P. L. 1198; but the 10 percent credit provided in said act is not to be added to the standing on an eligible list of a soldier, as defined in the act, who passed his examination prior to January 1, 1940.

2. Soldiers, as defined in the Act of June 27, 1939, P. L. 1198, are not entitled to any statutory credit after passing a civil service examination, other than the 10 percent credit stipulated in said act.

3. Soldiers, as defined in the Act of June 27, 1939, P. L. 1198, who have passed a civil service examination with-

out the aid of the percentage credit in said act, are to be preferred in appointment over other eligibles, regardless of such soldiers' standings on the eligible list, so long as such soldiers are morally and physically fit to be employed. This advice applies whether such soldiers have been credited with the statutory percentage after examination, or not.

4. The Pennsylvania Liquor Control Board is not, and never was, subject to the Act of April 12, 1939, P. L. 27.

It is also our opinion, and you are accordingly advised, that:

5. Whenever a soldier, as defined in the Act of June 27, 1939, P. L. 1198, has successfully passed a civil service examination for a public position under the Commonwealth, or under any administrative department, board, commission, or officer of the Commonwealth, or under any political subdivision of the Commonwealth, he shall receive an added credit to his civil service rating of 10 percent, which, added to his passing grade, shall determine his standing on any eligible list.

6. Whenever a soldier, as defined in the Act of June 27, 1939, P. L. 1198, possesses the requisite qualifications and is eligible to appointment to such public position, where no civil service examination is required, the appointing power must appoint such soldier to such position, provided he is morally and physically fitted for the position.

7. A soldier, as defined in the Act of June 27, 1939, P. L. 1198, who has passed a civil service examination, and who possesses the requisite qualifications, may be preferred by the appointing power, even though his name does not appear on the eligible list.

8. All administrative departments, boards, commissions, officers, and political subdivisions of the Commonwealth, shall regard the Act of June 27, 1939, P. L. 1198, as the exclusive law relating to and governing preferential treatment of soldiers, as defined in said act, to public positions.