## McDowell, Appellant, v. Good Chevrolet-Cadillac, Inc.

Argued May 27, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*H. F. Dowling*, with him *Robert C. Haberstroh*, and *Dowling and Dowling*, for appellants.

*James W. Nelson*, with him *George H. Hafer*, and *Nelson & Campbell*, and *Hull, Leiby and Metzger*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, September 28, 1959:

Appellants, fire and casualty insurance agents,[1] instituted an equity action in the Court of Common Pleas of Blair County to enjoin Good Chevrolet-Cadillac, Inc., a corporation engaged in the sale of motor vehicles, from selling fire and casualty insurance in con-

---

[1] The suit is brought in a representative capacity by four agents on their own behalf and on behalf of the Blair County Association of Fire and Casualty Agents.

nection with sales of motor vehicles on an installment basis and receiving therefrom a commission, it being alleged that such actions constituted a violation of the anti-rebate sections of the Insurance Department Act of 1921.[2] After various pleadings were filed, the parties finally agreed that the matter be submitted to the court in the nature of a case stated. After the parties had stipulated as to the facts and legal arguments were presented, the court below dismissed the complaint. From that action this appeal was taken.

Appellee, a Pennsylvania corporation, holds two licenses: a license to engage in business as an installment seller of motor vehicles under the Motor Vehicle Sales Finance Act[3] and a license issued by the Insurance Department to act as an agent for insurance companies in the solicitation of applications for insurance policies insuring persons having an insurable interest therein against loss or damage to motor vehicles. Appellee sells motor vehicles to persons who desire to purchase motor vehicles on an installment plan basis and the financing thereof is arranged for by appellee through the General Motors Acceptance Corporation (herein called finance company). The buyer enters into a conditional sales contract with appellee, the relevant terms of which are: (1) "for the purpose of securing payment of the obligation . . ., the seller reserves title, and shall have a security interest, in said property until said amount is fully paid in cash"; (2) if the "seller"—i.e., motor vehicle dealer—transfers his right in the contract, "seller" then refers to the "subsequent holder" or transferee; (3) the buyer has the option of securing his own insurance on the motor vehicle or of securing such insurance through

---

[2] Act of May 17, 1921, P. L. 789, 40 PS §§275, 276.

[3] Act of June 28, 1947, P. L. 1110, as amended, 69 PS §601 et seq.

appellee;[4] (4) if appellee obtains insurance for the buyer the cost of such insurance is paid by the buyer and included in the finance charges. Upon the execution of this contract appellee then assigns its rights thereunder to the finance company which pays the appellee an amount equal to the difference between the cash selling price of the motor vehicle and the buyer's down payment; the buyer pays the amount of this difference plus the finance charges, in installments, to the finance company. If the buyer indicates that he desires that appellee arrange for the required insurance, the latter acting as agent for Motors Insurance Corporation (herein called insurance company), applies for a policy of insurance which is issued at standard rates and names the buyer and the finance company as the insureds. The finance company pays the amount of the premium to the insurance company and includes the amount thereof in the charges to be paid by the buyer. Appellee is neither named as an insured in the policy nor does it pay any part of the premium. As agent for the insurance company appellee receives and retains the usual commission paid to insurance agents on policies of physical damage insurance issued by the insurance company.

Appellants contend that when appellee receives this commission its receipt constitutes a violation of Sections 635 and 636 of the Insurance Department Act of 1921, supra. Appellants' theory is that appel-

---

4 On the "Customer's Statement", in bold type, the following appears: "Do You Desire That the Seller Arrange for the Insurance Described In the Preceding Sentence? If Your An swer Is Yes, the Seller Will Apply For It To Motors Insurance Corporation for the Term Indicated In the Insurance Policy. Yes [ ] No [ ].

If the answer is no, give name and address of agent and the name of other insurance company through whom the insurance will be procured."

lee under the terms of the assignment to the finance company—providing that appellee "guarantees payment of the full amount remaining unpaid . . ., and covenants if default be made in payment of any instalment [by the buyer] to pay the full amount then unpaid to General Motors Acceptance Corporation upon demand. . . ."—retains a financial interest in the motor vehicle and, therefore, by receiving a commission for the sale of insurance on such motor vehicle, the appellee is in effect obtaining insurance at a cost less than that paid by other like purchasers of insurance.

Appellee, on the other hand, contends that the policies of insurance insure only the buyer and the finance company and not the motor vehicles themselves, that appellee is neither the insured nor does it pay any part of the insurance premium and, under these circumstances, no violation of the anti-rebate provisions of the Act of 1921, supra, occurs.

The payment and acceptance of rebates in the insurance field has long been the subject of legislative disapproval.[5] The present Act of 1921, supra, so far as pertinent, provides: Section 635: "No insurance agent . . . personally or by any other party, shall offer, promise, allow, give, set off, or pay, directly or indirectly, any rebate of, or part of, the premium payable on

---

[5] The Act of May 7, 1889, P. L. 116—the first anti-rebate act—was limited to life insurance companies and agents: the Act of July 2, 1895, P. L. 430 extended the provisions of the 1889 Act to insurants as well as agents and companies and increased the penalty for violations; the Act of May 3, 1909, P. L. 405, which repealed both the 1889 and 1895 Acts, extended anti-rebate provisions to *any* insurance company or *any* agent of *any* company and prohibited *any* person receiving rebates; the Act of March 31, 1911, P. L. 39 amended the 1909 Act but kept unchanged the provisions relating to rebates applicable to companies other than life insurance companies.

the policy or on any policy or agent's commission thereon, or earnings, profit, dividends, or other benefit founded, arising, accruing or to accrue thereon or therefrom . . . or any other valuable consideration or inducement, to or for insurance on any risk in this Commonwealth . . . which is not specified in the policy contract of insurance; nor shall any such agent . . . personally or otherwise, offer, promise, give, option, sell, or purchase any . . . thing of value whatsoever, as inducement to insurance or in connection therewith . . .:" Section 636 : "No insured person or party or applicant for insurance shall, directly or indirectly, receive or accept, or agree to receive or accept, any rebate of premium, or of any part thereof, or all or any part of any agent's . . . commission thereon, or any favor or advantage, or share in any benefit to accrue under any policy of insurance, or any valuable consideration or inducement, other than such as are specified in the policy". It is obvious that the object of this legislation is to outlaw "unfair treatment of prospective insurants of the same class by offering inducements to one person that are not available to all persons of the same class": *Dare's Case*, 13 Dauphin Co., 30, 32.

Under the present factual situation appellee occupies three positions : he acts as the seller of the motor vehicle to the buyer, he acts as the agent of the finance company and he acts as the agent of the insurance company. He acts in the latter capacity *only*, as permitted by law,[6] if he is requested by the buyer to place the insurance, and it is only when he acts in this capacity that he is charged with a violation of the statutory prohibition against rebates.

The thrust of the anti-rebate provisions of the statute is against the placement of insurance whereby the

---

[6] Motor Vehicle Sales Finance Act, Act of June 28, 1947, P. L. 1110, §17, 69 PS §617.

insured secures the insurance at a favored rate, regardless of the mode or the manner in which such favored rate is obtained. The court below well stated that "as is universally stated and recognized, a reduction of cost is the test of whether or not the statute is being violated . . . .". That appellee, as agents for the insurance company, places this insurance is conceded, but the mere placement of such insurance constitutes no violation of the law: the appellee is licensed to sell insurance and the propriety of the seller of a motor vehicle on an installment plan applying for such insurance is expressly recognized under the Motor Vehicle Sales Finance Act, supra. That the appellee is unnamed in the insurance policy is likewise conceded, the buyer and the finance company, as their interests appear, being the named insureds. Even though it be conceded, *arguendo*, that, by reason of the appellee's guaranty to the finance company to pay the amount of the obligation in the event the buyer defaults, the appellee retains an insurable interest in the motor vehicle, the fact remains that the insurance is written not on this interest but on the interests of the buyer and the finance company therein. The appellee's brief well covers this situation: "The dealer-agent is neither an insured person or party under the policy issued in conjunction with such conditional sale contract, nor does the dealer have any rights of an insured person or party. Since appellee is not a party to the insurance contract and is not referred to therein in any manner whatsoever, appellee could not recover on the policy: Spires v. Hanover Fire Insurance Co., 364 Pa. 52, 70 A. 2d 828, 830".[7]

---

[7] *Ostroff v. Springfield Fire & Marine Insurance Co.*, 172 Pa. Superior Ct. 211, 92 A. 2d 899, relied on by appellants in this connection, is inapposite. In that case the finance company, unnamed as an insured, was allowed recovery since the policy contained a loss-payable clause in favor of the finance company.

Appellee in order to have violated the anti-rebate statutory provisions must be shown to have received insurance at a cost less than the cost paid by other insurants for similar insurance and proof of such is entirely absent in the present situation. The appellee paid for no insurance, received no insurance nor did it because of any guaranty imposed on it under the terms of the assignment of the conditional sales contract retain any such interest as would enable it to recover upon the policy of insurance issued to the buyer and the finance company. In the absence of any proof in the instant situation that appellee received insurance protection at a cost less than other insurants were able to receive insurance protection there is a violation neither of the letter nor spirit of the anti-rebate law.

*Dare's Case,* 13 Dauphin Co. 30 (an opinion wherein the Attorney General approved the action of a bona fide insurance agent in receiving a commission for placing insurance on his own property), *Arcim Corporation v. Pink,* 2 N.Y.S. 2d 709 (corporation acting as broker and receiving commissions on placing insurance where the named insureds owned all of the stock of the corporation), and *Black Motor Co. v. Baughman & Datron Ins. Agency,* 290 Ky. 163, 160 S.W. 2d 388 (where an automobile dealer unlicensed as an insurance agent attempted to claim commissions for insuring motor vehicles through a licensed insurance agent to offset premiums owed by the automobile dealer to the same insurance agent for fire insurance on the dealer's own buildings and property), relied on by appellants, are clearly inapposite.

Appellants seek comfort in an opinion of the Attorney-General dated January 23, 1948, but such opinion dealt with an entirely different situation than herein presented. In an Opinion of the Attorney-General dated January 13, 1949 covering the instant situation

the following conclusion was reached: "It follows then that the dealer is at no time obtaining insurance for his own protection and, therefore, being an agent of the insurance company, he is entitled to the commissions on insurance which covers either the purchaser in full or the purchaser in part and subsequently the finance company in part." Such an interpretation, while not binding upon us, is nonetheless entitled to great weight: *Federal Deposit Insurance Corp. v. Board of Finance and Revenue*, 368 Pa. 463, 471, 84 A. 2d 495; Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

Conformity of our construction of the anti-rebate statutory provisions with the legislative intent is made more evident by an examination of certain legislative history. After an exhaustive study by the Joint State Government Commission of the sale of motor vehicles within the Commonwealth on an installment basis, the legislature passed the Motor Vehicle Sales Finance Act, supra. It is highly significant that, although that statute extensively considered the sale of insurance in connection with the financing of the purchase of motor vehicles, the statute contains no provision which prohibits the installment seller of motor vehicles from acting as a licensed automobile insurance agent or from selling insurance under the present circumstances. Of further significance, at the same session of the legislature, the legislature failed to pass House Bill 980 which proposed to amend the Act of 1921, supra, by providing that it was unlawful for an insurance agent to solicit, negotiate or effect contracts of insurance for the coverage of personal property sold by himself, his employer, employees or members of his immediate family. On three subsequent occasions the legislature failed to pass similar legislation.[8] That

---

[8] House Bill 380, Session of 1951; House Bill 1111, Session of 1953 and House Bill 1423, Session of 1955.

246

such legislative failure to act may be considered is clear: *Green's Dairy et al. v. Milk Control Commission,* 48 Dauphin Co. 385, aff'd 340 Pa. 1, 16 A. 2d 9, cert. den'd, 312 U. S. 708.

Other jurisdictions presented with a similar situation have reached the same conclusion: *Odle v. McCormack,* 185 Tenn. 439, 206 S.W. 2d 416; *Florida Assn. of Insurance Agents et al. v. Larson,* 155 Fla. 13, 19 S. 2d 414; *Department of Insurance of Indiana v. Motors Insurance Corporation et al.,* 236 Ind. 1, 138 N.E. 2d 157.

Decree affirmed.