508 A.2d 292

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF MILITARY AFFAIRS, and Pennsylvania National Guard, Appellant,**

v.

**David H. GREENWOOD, Appellee.**

Supreme Court of Pennsylvania.

Argued May 15, 1985.

Reargued Jan. 22, 1986.

Decided April 23, 1986.

Dennis T. Guise, Annville, for appellant.

Louis C. Long, Louis B. Loughren, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

McDERMOTT, Justice.

This appeal involves the question of whether a Pennsylvania National Guardsman, injured while participating in annual training, is eligible for compensation under the Commonwealth's military benefit provisions.

David Greenwood was a member of the Pennsylvania National Guard. He enlisted in 1969 and was scheduled for discharge on September 17, 1975. In August of 1975, he attended what was to be his last annual encampment at Fort Indiantown Gap. While loading a truck at camp he injured his back. He was treated by Army physicians and put on incapacitation pay. He applied for a disability pension, which was denied, and on September 17, 1975, he was, according to the scheduled end of his enlistment, discharged from the Guard. His incapacitation pay ended, and, except for continued medical services, the Army denied all other claims for benefits on grounds that appellee's injury was not such as to entitle him to disability compensation beyond his date of discharge. Since the standards for evaluating a soldier's fitness for duty are not the same as those used to assess disability for civilian occupations the federal government, applying its standards, determined that appellee, although injured, was not disabled from military duty. Appellee therefore was discharged because he requested discharge, and not because he was unfit for military duty. That he was unable to return to his civilian construction job until January, 1976, was not disputed.

Since the Army would afford no relief beyond free medical care claimant filed for benefits under the Pennsylvania Workmen's Compensation Act,[1] alleging that he was injured upon the business of the state. The compensation referee denied benefits upon the ground that while undergoing

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1 *et seq.*

annual training with the Guard he was not employed by the state. The Workmen's Compensation Appeal Board reversed the referee, holding that the claimant was, while on duty with the Guard, a state employee and entitled to state compensation if he was not compensated by the federal government.

On appeal, the Commonwealth Court vacated the award, holding that, although the Pennsylvania Workmen's Compensation Act was to be applied in computing the amount of compensation in a given case, the Department of Military Affairs had exclusive authority to determine whether eligibility for state military benefits lies for a member of the Pennsylvania National Guard. *Commonwealth, Pennsylvania National Guard v. Workmen's Compensation Appeal Board,* 63 Pa.Cmwlth. 1, 437 A.2d 494 (1981).

Claimant subsequently filed a claim [2] for disability compensation with the Department of Military Affairs under Section 844 of the Military Code of 1949,[3] the provision governing state military benefits. The Department of Military Affairs decided that a Guardsman on duty at annual training encampment was serving the federal government and hence claimant was not entitled to state military benefits. Appeal from that determination was taken again to the Commonwealth Court. That court, in a two-to-one decision, held that the Department of Military Affairs was

2. In his disability compensation claim with the Department of Military Affairs, the testimony and exhibits developed in the workmen's compensation proceedings were incorporated by reference.

3. This case involves the construction of provisions of the Military Code of 1949, Act of May 27, 1949, P.L. 1903, No. 568, § 101 *et seq., as amended,* 51 P.S. § 1–101 *et seq.,* effective January 1, 1976. The Military Code of 1949 was repealed and replaced, in many instances without substantial change, by the Act of August 1, 1975, P.L. 233, No. 92, § 1 *et seq.,* 51 Pa.C.S. § 101 *et seq.*

   The provision with which we are most directly concerned, Section 844, 51 P.S. § 1–844, was replaced by the Act of August 1, 1975, P.L. 233, No. 92, § 3501, 51 Pa.C.S. § 3501, effective January 1, 1976. Since the events pertinent hereto preceded the effective date of the new Military Code, and since there is no clearly manifested legislative intention to afford retroactive application, the instant matter is governed by the provisions of the Military Code of 1949. *See* 1 Pa.C.S. § 1926.

in error and that claimant Greenwood was entitled to state benefits. *Greenwood v. Commonwealth, Department of Military Affairs*, 78 Pa.Cmwlth. 480, 468 A.2d 866 (1983). We granted allocatur to decide the question. The case was argued on May 15, 1985, and, pursuant to order of Court, reargued on January 22, 1986.

Whether claimant is eligible for state military benefits in the instant situation is controlled both by the character of National Guard annual training and by Section 844 of the Military Code of 1949.[4] That section provided as follows:

> If any officer or enlisted man of the Pennsylvania National Guard is wounded or otherwise disabled, or dies as a result of wounds or other disability received or contracted while performing duty in active service of the State or in the performance of other State military duty under competent order or authority, or while engaged in volunteer service during a civil emergency at the request of competent military authority, he, or his dependents, if not compensated therefor by the government of the United States, shall receive from the Commonwealth just and reasonable relief, the amount of compensation to be determined in accordance with the Workmen's Compensation Law of Pennsylvania.

The Commonwealth Court majority, per Judge David W. Craig, determined that the annual training in which claimant was engaged was such state military duty as would meet the threshold requirement of that section. Further, the court held that claimant was not barred under the provision that otherwise eligible candidates shall receive relief only "... if not compensated therefor by the government of the United States." The court thus ordered the award of benefits.

In his dissent, Judge John A. MacPhail disagreed with both aspects of the majority's decision. He would have held that the claimant "was not in the active service of the Commonwealth when his injury occurred," *id.* at 489, 468

4. *See* n. 3 *supra.*

A.2d at 871; and further, that the federal benefits received by the claimant constituted his exclusive remedy.

In reaching its decision, the Commonwealth Court majority carefully analyzed the history and function of the National Guard and noted its hybrid status as an instrumentality of both the state and federal governments. They further observed that annual training qualifies neither as active state duty under Section 311 of the Pennsylvania Military Code,[5] nor as "active federal service" under 10 U.S.C. §§ 3495, 3500.[6] Nevertheless the majority held, in effect, that since National Guard annual training has a state aspect, such is sufficient to qualify annual training as "other State military duty" for purposes of Section 844. While much of the analysis employed by the Commonwealth Court majority is illuminating, we cannot accept the conclusion ultimately reached.

As always, our analysis must be guided by the statutory construction maxim that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

Before addressing the question of when the General Assembly intended state military benefits to apply, it is instructive to note how pervasively federal most material aspects of the annual training program are. While the

**5.** Repealed and replaced by 51 Pa.C.S. § 508. *See* n. 3, *supra.*

**6.** There is much federal precedent concerning the issues of "active" and "inactive" federal service, and concerning whether National Guardsmen in particular contexts qualify as state or federal employees for benefits purposes or for purposes of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* However, as Judge Craig observed in footnote 2 to the Commonwealth Court majority opinion, such cases are not controlling on the question of a National Guardsman's status for purposes of Section 844 of the Pennsylvania Military Code. 78 Pa.Cmwlth. at 484, n. 2, 468 A.2d at 869, n. 2.

*See Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965). *Cf.* 10 U.S.C. § 3686, and 32 U.S.C. § 318.

*See also Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Feres v. United States,* 340 U.S. 135 (1950); *Layne v. United States,* 295 F.2d 433 (7th Cir.1961).

Govenor of the Commonwealth is directed to accept federal allotments of troops and property, 51 P.S. § 1–302,[7] and to furnish shelter and storage provisions and to carry out the training requirements set forth by the federal government, 51 P.S. § 1–303,[8] in virtually every meaningful respect it is the federal government's system of benefits and regimen that controls the annual training process. Regardless of the host state involved, the training is authorized by federal law, 32 U.S.C. § 502, subject to federal regulations and provisions, 32 U.S.C. §§ 502–503. The uniforms, arms, and equipment utilized during training are prescribed and provided by the federal government. 32 U.S.C. § 701, *et seq.* A Guardsman engaged in annual training receives his or her pay and allowances from the federal government. 32 U.S.C. § 503. Further, Guardsmen undergoing such training are by federal statute considered to be in federal service. 10 U.S.C. § 3686. Finally, Guardsmen injured while training are eligible for federal hospital benefits, pensions, and other compensation. That section provides:

A member of the National Guard is entitled to hospital benefits, pensions, and other compensation provided by law, or regulation for a member of the Regular Army or the Regular Air Force, as the case may be, of corresponding grade and length of service, whenever he is called or ordered to perform training under section 502, 503, 504, or 505 of this title ... for any period of time, and is disabled in line of duty from injury while so employed.

32 U.S.C. § 318.

Turning to an analysis of the relevant statutory materials, we observe several clear indications that the General Assembly intended to confer Section 844 benefits restrictively. The proviso that an otherwise eligible Guardsman shall receive benefits only "... if not compensated therefor by the government of the United States" evinces a restrictive legislative intention, though it does not control our

---

7. Repealed and replaced by 51 Pa.C.S. § 502. *See* n. 3, *supra.*

8. Repealed and replaced by 51 Pa.C.S. § 503. *See* n. 3, *supra.*

threshold inquiry of what State military status qualifies an individual for eligibility.

It is also instructive to examine the genesis of the phrase now posed for our construction, that benefits shall be available to those wounded, disabled, or killed "in the active service of the State or in the performance of other State military duty under competent order or authority, or while engaged in volunteer service during a civil emergency at the request of competent military authority." Prior to an amendment passed by the General Assembly in 1965,[9] Section 844 did not include the word "State" before the term "other military duty." The addition of the word "State" in that context clearly makes it operate as a word of limitation. If the General Assembly's action in adding the word to the section is to be given effect, it must be concluded that that body intended to restrict compensation and to deny benefits to Guardsmen injured performing other military duty that did not qualify as "State military duty." This restriction is consistent with the construction that the Section 844 state benefits scheme is aimed at those situations where the interests of Pennsylvania, rather than the federal government, are at stake.

Further support for the above view, emphasizing the distinctiveness of the state and federal interests involved, may be found in the preamble to the 1965 Act,[10] which stated in pertinent part that the section in question was aimed at "providing compensation for Pennsylvania National Guardsmen who are injured, disabled or die while on active duty at the call of the Governor or other competent military authority for the service of the State, or who volunteer for service in a civil emergency." [11] While the argument might be made that indirect benefits accrue to the Commonwealth from annual training, the plain meaning of the words employed is to restrict the availability of

9. Act of July 23, 1965, P.L. 249, No. 141, 51 P.S. § 1–844.

10. See n. 9, *supra.*

11. 1 Pa.C.S. § 1924 provides that the preamble of a statute may be considered in the construction thereof.

Section 844 benefits to situations where the Commonwealth's interests are involved directly.

Finally, in assessing the scope General Assembly intended its benefits provision to possess, it is helpful to consider alternative schemes which that body might have chosen, but did not. The General Assembly did not in this instance choose to explicitly include annual training. That the General Assembly was capable of expressly providing for state benefits for claims arising from federally-funded training is apparent from the fact that it has done so in the deceased soldiers' dependents' pension scheme. 51 P.S. § 381 *et seq.*[12] This provision, in effect when Section 844 was passed, provided for a state pension for survivors of members of the National Guard killed "while in active service, under orders of the Governor, which active service shall include participation in armory drills or participation in aerial flights incidental to training ..." That the General Assembly did not choose to employ a similar scheme in the instant provision provides further support for the view that Section 844 was not aimed at the situation of injuries incurred during annual training.

■ We conclude that in passing Section 844, the General Assembly intended to implement a system of state military benefits to be applicable only when a Pennsylvania National Guardsman is engaged in distinctively state military service. In addition to active state duty and volunteer service in the state during a civil emergency, such "other State military duty" might logically include forms of Guard duty paid for by Commonwealth funds rather than by the United States government. We need not, however, decide which such forms of service qualify for state benefits under Section 844, because it is clear from the language employed by the General Assembly in the statute and the preamble, from the available alternatives not chosen by that body, and from the essentially federal character of annual training

12. Act of April 1, 1909, P.L. 95 § 1 *et seq.*, 51 P.S. § 381 *et seq., as amended;* codified by the Act of August 1, 1975, P.L. 233, No. 92, § 3502, 51 Pa.C.S. § 3502.

encampments, that the General Assembly did not intend to include Guardsmen injured during such training among those eligible for state military benefits under Section 844.

■ Under all of the circumstances, albeit with regret that a Guardsman is left unaided, we find that the annual training in which claimant was engaged at the time of his injury was not such State military duty as would qualify under Section 844. Perhaps the General Assembly, now faced with a crack in the care they provide, might plan further studies.

Accordingly, the order of the Commonwealth Court is reversed, and the order of the Department of Military Affairs denying benefits is reinstated.

FLAHERTY, J., files a Dissenting Opinion in which LARSEN, J., joins.

LARSEN, J., files a Dissenting Opinion in which PAPADAKOS, J., joins.

FLAHERTY, Justice, dissenting.

I respectfully dissent from the majority view of this case as it appears in the Opinion of Mr. Justice McDermott.

Section 844 of the Pennsylvania Military Code provides, in pertinent part:

If any officer or enlisted man of the Pennsylvania National Guard is wounded or otherwise disabled, or dies as a result of wounds or other disability received or contracted *while performing duty in active service of the state or in the performance of other state military duty* ... he ... shall receive from the Commonwealth just and reasonable relief, the amount of compensation to be determined in accordance with the Workmen's Compensation Law of Pennsylvania.

Act of May 27, 1949, P.L. 1903, *as amended,* 51 P.S. § 844. (Emphasis added).

In my view, the controlling question in the case is whether the guardsman in this case may be said to have performed a state function within the meaning of Section 844. Like Judge Craig, I believe that the guardsman performed a state military duty under Section 844, and thus, that he is eligible for the state benefits conferred by that section.

While it is true, as observed by Mr. Justice McDermott, that many aspects of the National Guard training program are "pervasively federal," it is also true, as observed by Judge Craig, that the National Guard is the modern militia reserved to the states by Art. I, § 8, cl. 16 of the Constitution of the United States, and that state military personnel and a state hierarchy of command, culminating in the Governor, actually implement the federally mandated training. Thus, federal and state personnel, statutes, and governmental organizations are involved in the training.

Furthermore, this training benefits the Commonwealth of Pennsylvania as well as the federal government. Again, as Judge Craig points out, the Governor is empowered under the Pennsylvania Military Code to call the National Guard into active duty to protect against various threats to the security and integrity of the Commonwealth. Thus, it is in Pennsylvania's interest to have at its disposal competently trained military personnel able to be called up when the need arises. Since the training serves both federal and state interests, a national guardsman may be said to be performing a state military duty under Section 844.

In sum, I understand the phrases "service of the state" and "state military duty" to refer to any official National Guard duties which are not *distinctly* federal in character, as would be the case when the National Guard is activated into federal service. I do not believe that the use of the modifying term "state" was meant to foreclose a guardsman's receiving benefits under Section 844 merely because he was involved in service which was not *exclusively* for the benefit of the Commonwealth.

For these reasons, I would affirm the order of Commonwealth Court.

LARSEN, J., joined.

LARSEN, Justice, dissenting.

I dissent on the basis of the Commonwealth Court opinion authored by the Honorable Judge David W. Craig. *Commonwealth, Dept. of Military Affairs, and Pennsylvania National Guard v. Greenwood,* 78 Pa.Commw. 480, 468 A.2d 866 (1983). Additionally, I join in Mr. Justice Flaherty's dissenting opinion.

PAPADAKOS, J., joined in this dissenting opinion.