534 A.2d 160

Richard S. Herskovitz, Petitioner *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Respondent.

Louis G. Cocheres, Petitioner *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Respondent.

Albert J. Strohecker, III, Petitioner *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Respondent.

Argued September 16, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, COLINS, and PALLADINO.

*Richard S. Herskovitz,* for himself.

*Debra K. Wallet, Wallet* & *Christianson,* for petitioner, Louis G. Cocheres.

*Albert J. Strohecker, III,* for himself.

*Earl R. Dryer,* Deputy Counsel, for respondent.

*Dennis T. Guise,* Chief Counsel, for Amicus Curiae, Department of Military Affairs.

*Steve C. Nicholas,* for Amici Curiae, National Guard Association of Pennsylvania and Pennsylvania National Guard Enlisted Association.

*John J. Dunn, Sr.,* with him, *Robert W. Valimont, Dunn & Byrne,* for Amicus Curiae, American Legion National Guard Association of Pennsylvania and Pennsylvania National Guard Enlisted Association.

OPINION BY JUDGE MACPHAIL, December 3, 1987:

The Petitioners above-named[1] appeal from the orders of the State Civil Service Commission (Commission) which denied each Petitioner veterans' preference points resulting in their non-selection for appointment to the position of administrative law judge with the Pennsylvania Public Utility Commission. We reverse.

At issue is the question of whether training time and service in the Pennsylvania National Guard and/or the U.S. Army Reserve entitle the participant to the benefits provided by Chapter 71 of the Military Code (Code), 51 Pa. C. S. §§7101-7109.

It appears from the Commission's findings of fact that Petitioner Herskovitz served in the Pennsylvania National Guard from January 3, 1970 to January 2, 1976. He was on active duty for training purposes from April 22, 1970 to October 18, 1970. He was honorably discharged on January 2, 1976.

Petitioner Cocheres, while attending college, served in the Reserve Officers Training Corps from Septem-

---

[1] The cases were consolidated for reargument before a court en banc. We have been favored by a number of briefs from amici curiae.

ber, 1965 to May 24, 1969. He entered the U.S. Army Reserve in September, 1967 and spent six weeks at a summer training camp at Indiantown Gap Military Reservation during the summer of 1968. He was appointed a 2nd Lieutenant in the U.S. Army Reserve on May 25, 1969. From September 22, 1972 to November 28, 1972 the Petitioner underwent basic training at Fort Gordon, Georgia. On May 24, 1977, he was honorably discharged from the U.S. Army.

Petitioner Strohecker, while attending college, served in the Reserve Officers Training Corps for 4 years. He participated for three months in an armor officer basic training course in 1971 and upon completion thereof he was released to the U.S. Army Reserve where he served from January, 1972 through September, 1975. He has been a member of the Pennsylvania Army National Guard since October, 1976.[2]

In arriving at its decisions denying the Petitioners veterans' preference, the Commission interpreted the language in Section 7101 of the Code, 51 Pa. C. S. §7101, to mean that only those persons who were engaged in full-time active duty other than active duty for training, would qualify for the benefits provided by the Code.

Section 7104 of the Code, 51 Pa. C. S. §7104, provides that a "soldier" who possesses the requisite qualifications under the Code, is entitled to its benefits. Section 7101, 51 Pa. C. S. §7101, defines "soldier" as follows:

'[S]oldier' means a person who served in the armed forces of the United States, or in any women's organization, officially connected there-

---

[2] The sole reason asserted by the Commission for disqualifying Strohecker was that he failed to establish the requisite service in the armed forces of the United States.

with, during any war or armed conflict, in which the United States engaged, *or who so served or hereafter serves in the armed forces of the United States,* or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service.

(Emphasis added.) Quite obviously, our initial inquiry must be to determine whether Petitioners fall within the above statutory definition.

In the construction and interpretation of a statute we must ascertain and effectuate the intention of the General Assembly and, if possible, give effect to all of the statute's provisions. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a).

Section 7102(a), 51 Pa. C. S. §7102(a), provides that the preference credits are to be awarded to a soldier "for the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country." We believe that this is a clear statement of legislative intent. We also believe that one who serves in the Pennsylvania National Guard or in the U.S. Army Reserve receives the same discipline and experience of military training as those engaged in full-time active service and that the Guard or Reserve voluntary enlistments demonstrate the same public-spirited service for the preservation of our country as those who have volunteered or may have been drafted into full-time active service. It is true, of course, that the actual continuous time of service is different for those who are "regular army" and those who are in the Guard or the Reserve, but the same kinds of disruption in normal civilian life do occur, albeit on a lesser scale.

The Commission, relying upon an Attorney General's Opinion[3] and this Court's opinion in *Greenwood v. Department of Military Affairs,* 78 Pa. Commonwealth Ct. 480, 468 A.2d 866 (1983), *rev'd,* 510 Pa. 348, 508 A.2d 292 (1986), concluded that active duty for training was not the type of "service" contemplated by the Code.

The Attorney General's Opinion[4] relied upon *Mitchell v. Cohen,* 333 U.S. 411 (1948), which held, *inter alia,* that an "ex-serviceman" was someone who completely disassociated himself from his civilian status and employment during the period of his military service and thus experienced substantial long-term interference with his civilian life. The Code's definition of "soldier," of course, contains no such limiting language; rather, the clear language of the statute is that a soldier includes any person who *served* or is *serving* in the armed forces of the United States. This Court's decision in *Greenwood,* which held that a Pennsylvania National Guardsman who was injured while participating in annual training was entitled to compensation under the provisions of Section 844 of The Military Code of 1949,[5] was reversed by our Supreme Court subsequent to the Commission's decision. *See Department of Military Affairs v. Greenwood,* 510 Pa. 348, 508 A.2d 292 (1986). Our Supreme Court recognized the state-federal dual character of the Pennsylvania National Guard and held that annual training which is federally funded is perva-

---

[3] Opinion of Attorney General T. McKeen Chidsey, No. 583, filed July 8, 1948.

[4] An Attorney General's Opinion while not binding upon a court is entitled to great weight. *McDowell v. Good Chevrolet-Cadillac, Inc.,* 397 Pa. 237, 154 A.2d 497 (1959).

[5] Act of May 27, 1949, P.L. 1903, *as amended, formerly* 51 P.S. §844, repealed by Section 2 of the Act of August 1, 1975, P.L. 233.

sively *federal* in character and not such state military duty as would qualify the Guardsman for benefits under the Code.

We note that each of the Petitioners has undergone training at federal installations, that both the Pennsylvania National Guard and U.S. Army Reserves are subject to call for duty and have been called for duty outside the boundaries of the United States, *see* 10 U.S.C. §§331—333, 672(a), 672(b), 673(a) and 673(b), and that both the state National Guard units and U.S. Reserves are an integral part of the United States Total Force Policy. We conclude that all Petitioners have been members of the armed forces of the United States within the meaning of Section 7101 of the Code.

It is true, as the Commission notes, that the terms "served" and "serves" are not defined in the Code. The Commission, as we have observed, was of the opinion that the service contemplated must be long term.

When this case was reargued, we directed counsel to address the implication, if any, of Section 103 of the Code, 51 Pa. C. S. §103, on the issue before us. That section provides:

> It is the intent of this title that it shall be in conformity with all acts and regulations of the United States affecting the same subjects, and all provisions of this title shall be construed to effectuate this purpose.

The Commission now argues that that Section gives further weight to their decision because federal definitions clearly exclude Petitioners as qualifying for benefits. They indicate that 5 U.S.C. §2108(1)(B) defines a "veteran" eligible for federal veterans' preference as one who has served on active duty, other than active duty for training, for a period of more than 180 consecutive days exclusive of service in the Army National Guard, Air National Guard or as a Reserve. "Active duty for

training" includes full-time duty in the National Guard of any state, drills and field exercises for the National Guard and full-time duty performed by Reserves for training purposes. 38 U.S.C. §101(22)(A) and (C).

Petitioners, on the other hand, call our attention to Section 7109 of the Code, 51 Pa. C. S. §7109, which provides:

> This chapter shall be construed as being the ex-clusive law applying to the Commonwealth, and its political subdivisions, in giving preference to soldiers in appointment or promotion to, or retention in, public position or on public works.

Petitioners also have traced the history of Chapter 71 of the Code. Whereas the Code is a substantial reenact-ment of The Military Code of 1949, *formerly* 51 P.S. §§1-101—1-1202, the preference provisions of Chapter 71 are derived from a separate and distinct statute en-acted in 1945, Act of May 22, 1945, P.L. 837, *formerly* 51 P.S. §§492.1—492.8, repealed by Section 2 of the Act of August 1, 1975, P.L. 233.[6] Section 103 of the Code is taken verbatim from Section 102 of the Military Code of 1949, *formerly* 51 P.S. §1-102; it was *not* a part of the Act of 1945 dealing with veterans' preference. It was not until 1975 that the statutory provisions relating to veterans' preference were incorporated as part of the present Military Code.

Furthermore, the purpose of Section 102 as it ap-plied to other military matters, can be ascertained quite apart from veterans' preference. Enlistment standards, uniforms, honorable discharge requirements are just a few of many areas where, for the sake of uniformity, state laws pertaining to the military must conform with federal standards.

---

[6] In fact, it appears that Pennsylvania has had a Veterans' Preference Act since 1887. *See Preferential Treatment of War Veterans*, 38 Pa. D. & C. 129 (1940).

The provisions of the United States Code previously cited are directed to veterans' preference for *federal* employment. 5 U.S.C. §2108. Even the nomenclature is different: federal law refers to veterans who are "preference eligible" whereas Chapter 71 refers to "soldiers."

For all of the above reasons, we conclude that Section 103 does not require that the provisions of the Code must conform with and be interpreted as a part of the federal legislation in the area of veterans' preference. It follows that the active training which each of the Petitioners has undergone at federal facilities qualifies as service in the armed forces of the United States and that their service in the Pennsylvania National Guard and/or U.S. Reserves qualifies each of the Petitioners for the veterans' preference provisions of Chapter 71 of the Code.

## ORDER

The orders of the State Civil Service Commission in the above-captioned cases are reversed.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent.

The issue, as the majority correctly notes, is whether the General Assembly intended those who serve in the Pennsylvania National Guard and Reserves to be soldiers, who by definition must have "served in the armed forces of the United States."

The majority's disposition of that issue is, in my judgment, inconsistent with the express language of the Code and contrary to the General Assembly's intent.

The Military Code defines the term "soldier" as

a person who served in the armed forces of the United States, or in any women's organization

officially connected therewith, during any war or armed conflict in which the United States engaged, or who so served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service.

51 Pa. C. S. §7101.

This section does not expressly include Pennsylvania National Guard and Army Reserve service within the language of the definition. Indeed, the General Assembly's specific inclusion of "any women's organization officially connected therewith" illustrates its intent to exclude the Pennsylvania National Guard and Army Reserve from the benefits of the statute. Under the maxim "expressio unius est exclusia alterius," where things are specifically designated in a statute, all omissions should be understood as exclusions. *Latella v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 14, 459 A.2d 464 (1983). A court cannot supply omissions in a statute even though the court believes such omission resulted from the General Assembly's inadvertence or failure to foresee or contemplate a case in question. *Id.* at 30, 459 A.2d at 473. Further inquiry into the legislative purpose of the statute would thus appear to be unnecessary.

However, the majority insists upon construing the statute's purpose based upon its purely subjective *belief,* Majority Opinion at pages 431-432, that National Guard and Reserve members receive the same discipline and experience and demonstrate the same public-spirited service as persons engaged in active duty service. This reasoning has no basis in the record or the Military Code. In fact, the inherent distinctions between active duty service and National Guard or

Reserves service support the opposite conclusion. In the case of a full-time member of the United States armed forces, the extent and nature of the training and service is significantly greater and more sustained.[1]

If we are obliged to go beyond the definitional provision, I would *first* review other provisions of the Military Code where similar language is used.

The Military Code consistently distinguishes between service in the "armed forces of the United States" and the Pennsylvania National Guard and Reserves, by expressly declaring the Guard to be the "armed forces *of this Commonwealth,*" 51 Pa. C. S. §1101; by requiring a minimum amount of service in either the Guard *or* armed forces of the United States *or* their reserve components when considering officer appointments in the Guard, 51 Pa. C. S. §§1303(b) and 901(b); by authorizing decorations for acts of bravery to "members of the Guard, Pennsylvania Guard *or* the armed forces of the United States *or* their reserve components," 51 Pa. C. S. §3701(b); and finally by making it unlawful for governmental employers to discriminate against an "individual not on extended active duty [based upon] his membership in the National Guard *or* any one of the reserve components of the armed forces of the United

---

[1] The majority also appears to place some significance on the "federal" aspects of service in the National Guard and Reserves, as was done in *Department of Military Affairs v. Greenwood,* 510 Pa. 348, 508 A.2d 292 (1986). However, the specific statute construed in *Greenwood* distinctly provided benefits for "state military duty," thus *necessitating* an inquiry into the federal versus state character of the National Guard training. We should not apply that reasoning to a statute which does not make this distinction between state and federal service. The General Assembly was cognizant of the federal aspects of the National Guard and Reserves service but considered it not to be a factor and simply chose not to include such service within the statutory definition of soldier.

States." 51 Pa. C. S. §7309(a) (emphasis added in citations above).

Can it be seriously questioned, after reviewing these provisions, that the General Assembly was unaware of the distinguishing characteristics of these military units? Its explicit use of the phrase "armed forces of the United States" in the Code's definition of "soldier" convinces me that the General Assembly did not mean to include members of the National Guard or Reserves in that definition.

The foregoing analysis comports with the overall objective of the Code's preference provisions. Certainly, one goal is to compensate persons who surrendered the personal freedoms, benefits and opportunities associated with the normal daily civilian life in exchange for the disruption and constraints imposed by military service. *See Feinerman v. Jones,* 356 F.Supp. 252 (M.D. Pa. 1973). This is evident from Section 7107 of the Code relating to the calculation of a worker's civil service years for seniority purposes. In this context, the worker is entitled to add his or her years as a "soldier" to the years spent on the job. Undoubtedly, this is meant to allow the soldier to "catch up" with his non-soldier colleagues who accumulated seniority while the "soldier" was unable to because of his military commitment.

The civilian lifestyle of Pennsylvania National Guard and Reserves members is not significantly disrupted so as to entitle them to the compensatory measures intended by the legislature. The instant cases demonstrate that the job applicants were able to attend law school and live relatively uninterrupted civilian lives without significant setbacks or loss of opportunity. At the same time, their full-time military counterparts had to forego the opportunities and benefits of civilian life because of their commitment to military service. Thus,

the "catch-up" purpose of the statute could only have been meant to benefit full-time military personnel.

Pennsylvania National Guard and Reserves members undoubtedly deserve credit and reward for their laudable service. The legislature is certainly aware of the peculiarities of the Pennsylvania National Guard and Reserves and could have included such service within the statute as it did with related women's organizations. However, such measures must be provided by the General Assembly and not this Court.

Judge PALLADINO joins in this dissent.