**FLORIDA ASSOCIATION OF INSURANCE AGENTS, et al., v. J. EDWIN LARSON, as State Treasurer and Insurance Commissioner.**

19 So. (2nd) 414        June Term, 1944
October 13, 1944        Division B

*William Fisher* and *John M. Coe,* for appellants.

*J. Tom Watson,* Attorney General, and *Howard S. Bailey,* Assistant Attorney General, for appellee.

*Milam, McIlvaine & Milam,* for Motors Insurance Corporation, *W. J. Steed* for Florida Automotive Dealers Association and *Ausley, Collins & Truett* for J. C. Carter, F. T. Woolverton, J. E. Peacock, Jr., and Blair Burwell, Jr., for intervenors.

THOMAS, J.:

Under the law the duty devolves upon the insurance commissioner (state treasurer) to subject to examination any applicant for permission to act as an insurance agent in order that it may be determined generally whether the applicant possesses qualifications such as character, experience, and familiarity with the insurance laws, and specifically whether he "Intends to actively engage in the business covered by such a license and in good faith to serve the public and is not procuring the license *chiefly for the purpose of obtaining a rebate or commission on insurance written for himself or his family or some . . . corporation in which he is interested or with which he is connected."* Section 627.05, Florida Statutes, 1941, and F.S.A. We have supplied the italics and have omitted from the statute quoted such words as it does not seem necessary to consider in the present controversy.

Under Section 627.08, Florida Statutes, 1941, and F.S.A., "No person . . . representing any such insurer in any capacity except primarily to solicit, negotiate or effect contracts of insurance . . . on a strictly commission basis, shall be deemed or held to be an insurance agent. . . ."

With this introduction of the relevant statutory law we shall proceed to our consideration of the issues. The bill of complaint sought a declaratory decree interpreting "Chapter 627," from which we have quoted, and prayed for an injunc-

tion against the issuance of licenses by the state treasurer, as insurance commissioner, to certain automobile dealers authorizing them to serve as insurance agents. It seems useless further to give the contents of the initial pleading or to analyze the answers filed by the defendant and the intervenors, for the questions posed by appellants spring from the facts, and these facts are presented by stipulation. We turn to them now to determine whether granting licenses to applicants would violate the two statutes already cited.

The applicants seem to possess all of the prerequisites entitling them to act as insurance agents, unless prohibited by the first statute because of some relationship between them and General Motors Acceptance Corporation, and by the second statute because of some relationship between them and Motors Insurance Corporation. The latter is authorized to do an insurance business in Florida and is owned "except for Directors' qualifying shares" by General Motors Acceptance Corporation, which is also licensed to do business in Florida, and it is owned "except for Directors' qualifying shares" by General Motors Corporation.

The persons whom the insurance commissioner proposes to license as insurance agents are dealers in products manufactured by General Motors Corporation. The decision of this controversy, then, may be narrowed to the question whether these dealers, because of their business relationship with General Motors Corporation, may be said to be "connected" with General Motors Acceptance Corporation, disqualifying them under 627.05, supra, or so represent Motors Insurance Corporation in some capacity other than insurance agents as to disqualify them under Section 627.08, supra, because it is owned by General Motors Acceptance Corporation and the latter, in turn, by General Motors Corporation.

It is argued that if the corporate fiction is penetrated it will be discovered that the trio are actually but one entity engaged in three enterprises: (1) the manufacture, (2) the sale, and (3) the insurance of a product; that the applicants occupy the positions of "dealers" in the first and "agents" in the third, but "only . . . customer[s] or procurer[s] of trade" in the second.

As it is perfectly clear that the insurance corporation is owned by the finance corporation and the latter is owned by the manufacturing corporation, there is no need for an extended excursion through the corporate veil, but inasmuch as any connection between the prospective agents and either General Motors Acceptance Corporation or Motors Insurance Corporation would of necessity arise from the association with General Motors Corporation, we should immediately examine what we shall presently call the "arrangement" between the applicants and General Motors Corporation.

Automobiles are purchased by the dealer from the manufacturer, and payment for the cars is made by the former to the latter at the time of delivery. Incidentally, during the period betwen delivery to the dealer and resale by him the automobiles are insured in a company other than Motors Insurance Corporation. When a vehicle is eventually sold by a dealer the buyer may pay all cash or may pay part cash and arrange to retire the balance of the purchase price in periodical payments. Here it should be observed that "Generally, the dealer endorses the purchaser's obligation agreeing to guarantee payment of it under stipulated contingencies. . . ."

It is especially important to bear in mind that a purchaser is not bound to accept the services of General Motors Acceptance Corporation in financing him or of Motors Insurance Corporation in insuring him; financing by the one and insuring by the other are entirely aside from the transaction of sale.

In a so-called "selling agreement" between them General Motors Corporation grants to the dealer an exclusive franchise to sell its motor vehicles and a nonexclusive franchise to sell "parts" in definitely described territory at prices fixed from time to time, and the dealer, in turn, promises to develop in the region a market for the products to the satisfaction of the corporation. It is expressly agreed that the dealer is not, by the contract, constituted an "agent or legal representative of Seller or Company for any purpose whatsoever" and "is not granted any right or authority to assume or to

create any obligation or responsibility, expressed or implied, in behalf of or in the name of Seller or Company or to bind Seller or Company in any manner or thing whatsoever."

We have found nothing in the contract which in any wise obligates the dealer to see that purchasers on credit are financed by General Motors Acceptance Corporation, much less that buyers of secondhand cars taken as a part of the consideration for new cars and resold shall be financed by that corporation; nor is there anything in the agreement by which the dealer or his customer is bound to obtain insurance from Motors Insurance Corporation, whether the car involved is new or is an old one taken in trade and resold. Lack of any such obligations in the agreement between General Motors Corporation and the applicants for licenses as insurance agents lends emphasis to certain statistics appearing in the agreed statement of facts.

The records of the applicant-dealers for the year 1941 show that sixty per cent of their retail sales were paid only partly in cash. The contracts on two thirds of these were handled by General Motors Acceptance Corporation, nine per cent by the dealers themselves, and twenty-five per cent by other financing companies. In the same year General Motors Acceptance Corporation financed only twenty-six per cent of the new cars and trucks delivered by General Motors Corporation to dealers. Furthermore, according to the stipulated facts, conditional sales of the dealers attempting to secure licenses are handled by General Motors Acceptance Corporation in varying degrees, some dealers and their customers patronizing that company extensively, and others, not at all.

The substance of the germane facts, as we understand them, is that an agreement exists between the dealer and the manufacturer with reference to the resale of automobiles and parts within certain areas, and this is the extent of his "connection" with the parent corporation. The dealer is certainly unauthorized to bind the manufacturer in any fashion and as certainly is responsible to the manufacturer for any automobiles sent by it for sale. Moreover, he is generally

liable as endorser on notes given for the unpaid balance of the purchase price of cars sold by him.

Presumably traffic in automobiles taken in trade and re-sold is independent of the contract with General Motors Corporation. The aspect of the financing of cars, either new ones bought from the manufacturer or old ones received by the dealer in exchange, seems not contemplated in the agreement between the manufacturer and the dealer. The same may be said of the insurance contracts. The very statistics we have quoted from the stipulation are evidence of the fact that the dealer acts independently in the matter of patronizing either General Motors Acceptance Corporation or Motors Insurance Corporation. Discounting paper with the one and procuring insurance from the other are entirely without the terms of the contract.

Of course a buyer may elect to have General Motors Acceptance Corporation finance him for the unpaid balance of the purchase price and may choose to have Motors Insurance Corporation insure the property. When he does, a conditional sales contract is executed, setting out the initial payment, deferred payments, insurance premium and the like, and the dealer asigns all his interest in the car and the contract to General Motors Acceptance Corporation, whereupon the property is registered in the name of the purchaser with a lien in favor of the corporation.

Motors Insurance Corporation pays the agent, the dealer, the commission on any insurance policies which have been issued to General Motors Acceptance Corporation and the purchaser of the automobile "as joint assureds." General Motors Acceptance Corporation pays Motors Insurance Corporation, for the purchaser, the premium on the policy and is eventually reimbursed by the purchaser as he retires his payments under the contract for sale. The dealer is not insured and does not pay any part of the premium.

We advert now to the statutes which we shall discuss in the order they were quoted. It is plain that the first was designed to inhibit any person's obtaining a license for the principal purpose of getting a commission or rebate, as the

case might be, on insurance written by him for his own protection or the protection of his family, his corporation, or his partnership. But for the law, one could secure an agency just to save the commission for himself, his family, or his business organization. Even so, the prohibition applies only in cases where that was the applicant's chief purpose.

The only clause especially involved here is the one referring to the connection between the dealers and a corporation in which they are interested. As we construe the first question propounded by appellants, they claim the interest of dealer in General Motors Acceptance Corporation is traceable through General Motors Corporation because of the selling agreement. In other words, because of the dealer's contract with the latter and ownership by it of the former, the dealer would be writing insurance for a corporation in which he was interested or with which he was connected.

We think there is no such association between the dealer and General Motors Corporation as is contemplated in the Statutes, and, therefore, it is impossible for us to arrive at the conclusion that there could be any of that nature between the dealer and General Motors Acceptance Corporation. It is plain to us that even if there were such an alliance as is contemplated by the statutes it could not be logically held, in the face of the statistics, that an agency was sought mainly to write insurance for General Motors Acceptance Corporation.

It is true there is a certain "connection" with General Motors Corporation for the purpose of disposing of its products in stated territory. It is obvious that the dealer is utterly independent in the matter of selling to customers who prefer some financing company other than General Motors Acceptance Corporation and some insurance company other than Motors Insurance Corporation. This independence is evident, too, from the statistics recited and the failure of the selling agreement to contain any mention of these features so essential in sales of automobiles on time.

The second question is based on the premise that there is such a relationship between the dealer and Motors Insurance

Corporation, through General Motors Corporation and General Motors Acceptance Corporation, that Section 627.08 would be violated because the dealer, by representing Motors Insurance Corporation in another capacity, could not be its agent in the sale of insurance. This relationship between manufacturer and dealer is so limited that even were it extended to the insurance corporation through the intervening finance corporation we would not find the connection or union offensive to the statute or likely to foment the abuses the statute was designed to prohibit.

Emphasizing what we have already said, we do not consider the alliance between the manufacturing corporation and the insuring corporation through the link, the financing corporation, so strong that the relationship between the dealer and the first could be construed as a representation of the last, thereby preventing the dealer, because of Section 627.08, supra, from acting as an agent in the sale of its insurance policies.

We think the treasurer as insurance commissioner should not, for any reason presented in this suit, be enjoined from issuing the licenses.

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.