## Pissanos v. State Farm Life Insurance Company

Before Dwyer, P. J., Orphans' Court, Specially Presiding, and Barber and McClelland, JJ.

*MacDonald, Illig, Jones & Britton,* for plaintiff.

*Knox, Pearson & McLaughlin,* for defendant.

DWYER, P. J., Specially Presiding, May 26, 1967.— The questions before us are: (1) Whether or not defendant insurance company entered into a valid contract with the decedent insured to pay the latter's beneficiary the sum of $10,000 on the death of the insured; and (2) if so, was the contract in effect at the time of the death of the insured.

On or about April 29, or May 1, 1965, James Pissanos (hereinafter referred to as "insured") submitted an application for life insurance to John A. Fabrizi, agent (hereinafter referred to as "agent") for defendant, State Farm Life Insurance Company (hereinafter referred to as "company"). The insured paid to the agent the sum of $8 with said application out of the total first monthly premium which amounted to $13.50. The agent issued to insured in return a "Conditional Binding Receipt".

On May 18, 1965, the company issued an insurance policy on the life of the insured, naming Naomi Pissanos, the insured's mother, as the beneficiary. The company forwarded the policy to the agent along with instructions to deliver said policy to the insured and to collect the balance of the first monthly premium $5.50 from him. The agent's instructions were that if this was not done by June 10, 1965, the agent was to return the policy to the company.

On or about May 20, 1965, the agent contacted the insured but the insured stated that he did not think he could handle the policy; consequently, the agent did not deliver it. About 10 days later agent again contacted insured and was again informed that insured did not believe he could handle the premiums.

On June 8, 1965, agent issued a check out of his own agency account in the amount of $5.50, payable to the company, and sent it to the company with the information that he had delivered the policy to the insured.

The agent testified that on June 8, 1965, he paid the $5.50 balance of the first monthly premium himself because ". . . I thought possibly on the following Friday that I could collect that $5.50."

The agent testified that on or about June 18, 1965, he again contacted the insured and asked him then if he could pay the $5.50 and the second monthly premium of $13.50, and that he was told by the insured that he could not pay it then, that he did not have the money.

The insured was killed in an accident on June 23, 1965, without having paid the agent the $5.50, or the agent or the company the second monthly premium of $13.50.

The beneficiary claimed the $10,000 from defendant and defendant refused to pay, claiming that no insurance was in force on the date of the death of the insured. On July 12, 1965, the company issued its check for $13.50, payable to the insured, for "return of amount paid for Life Policy No. G01-1301-540 which was not accepted by the applicant." This check has not as yet been cashed.

The beneficiary brought suit against the company and the jury returned a verdict for the beneficiary in the amount of $9,986.50 plus interest. The jury, as instructed by the court, deducted the second monthly

premium of $13.50 from its award, since the second monthly premium had not been paid but the death of the insured occurred within the 31-day grace period for paying such premium.

Defendant filed motions for a new trial and for judgment non obstante verdicto.

The only reason assigned for error in its motion for a new trial was the admission into the evidence by the court of the testimony concerning the refund premium check of $13.50 issued by the company to the insured on July 12, 1965. We find no error in allowing this testimony to have been presented to the jury. This concerns a fact which the jury had a right to know about in determining whether or not a contract existed between the company and the insured.

Concerning the motion for judgment n.o.v., we must first examine whether or not a legal contract existed between the insured and the company.

On the date that insured submitted his application he paid $8 out of a required $13.50, the first monthly premium, and was issued the "Conditional Binding Receipt." This receipt acknowledged the payment of the $8 and stated that the

"Life Insurance . . . applied for (i. e. $10,000.00) . . . shall be deemed to take effect as of the date of this receipt, subject to the conditions precedent and the terms and conditions printed on the reverse side hereof. *This receipt does not create temporary or interim insurance.* The amount of settlement received (i. e. the $8.00) shall be refunded if the application is declined or if a policy is issued other than as applied for and is not accepted. . . . " (Italics supplied).

The reverse side of said conditional binding receipt states the following:

"Subject to the limitations of this receipt and the terms and conditions of the policy that may be issued by the Company on the basis of the application, the Life Insurance . . . applied for shall not be deemed

to take effect unless the following conditions precedent to coverage are fulfilled, that is: (1) The Company, after investigation and such medical examination, if any, as it may require, shall be satisfied that on the date of this receipt each person proposed for insurance was insurable for the amount of Life Insurance . . . applied for according to the Company's rules and practice of selection; and (2) The application is accepted and approved by the Company . . . at one of its Regional Offices. . . . "

The company issued the policy and sent it to its agent, so it is obvious that the conditions precedent and the terms and conditions required in this conditional binding receipt were met by the insured and approved by the company. The question now arises as to whether or not the insured was covered by the policy which was issued, but not delivered, since the insured did not pay to the agent the balance of the first monthly premium. To determine this we must look at the policy.

The pertinent parts of the policy concerning this aspect are set forth as follows:

"State Farm Life Insurance Company under this policy insures the life of the Insured and agrees to pay the Amount of Insurance (i. e. $10,000.00) as a death benefit to the beneficiary.

"The insurance provided by this policy, beginning on the Policy Date, (i. e. May 18, 1965) is granted in consideration of the application and of the payment of premiums, in the amount and at the intervals specified above (i. e. $13.50 monthly), during the lifetime of the insured. The first premium is due on the Policy Date.

"This Policy is issued and accepted subject to all the conditions, benefits, and privileges described on the following pages, which are hereby made a part of this contract.

"If a Conditional Binding Receipt referring to this application has been duly signed and issued by an authorized agent of the Company, on the date this application is signed, then the terms of such Conditional Binding Receipt shall be effective. *Otherwise* it is understood and agreed that the Company shall incur no liability under this application until . . . (1) it has been received and approved, (2) a policy issued and delivered, and (3) all or a part of the initial premium specified in the policy paid, in which case such policy shall be deemed to have taken effect as of the policy Date. . . . (Italics supplied).

"Grace Period. A grace period of thirty-one (31) days shall be allowed following the due date for payment, without interest, of any premium after the first. During such grace period this policy shall remain in force . . . if death occurs prior to the end of the grace period, any unpaid premium or balance thereof, which is applicable to the policy month in which death occurs shall be deducted from the death benefit."

The company contends that it does not owe the beneficiary $10,000 or any other amount, claiming that no contract existed between it and the insured; that at no time before his death was the insured able and willing to pay the initial premium of $13.50, which was a prerequisite to any coverage. The Company contends that it would not issue a contract until the $13.50 was paid. The company further contends that the conditional binding receipt only provided coverage until the policy was issued or refused—that it was interim or temporary insurance until that time.

To determine whether or not these contentions are accurate, we must look to the conditional binding receipt and to the policy to see what was the actual agreement between the company and the insured.

The conditional binding receipt states unequivocably that life insurance shall be deemed to be effective as of April 29, 1965, subject to the conditions precedent and the terms and conditions all of which were obviously met by the insured, since the company actually issued the policy. This conditional binding receipt further specifically states that it did not create temporary or interim insurance. Consequently, at this point, it is obvious that the company insured the life of the insured for the $10,000.00 and that this was not temporary or interim insurance.

The company contends that the insured was never willing and able to pay the required initial premium. He obviously was willing to pay it because on April 29 or May 1, 1965, he agreed to do so. There is no direct testimony that he would never be able to pay it. The testimony as presented to the jury could certainly warrant the jury's finding that he never flatly refused to pay the balance, but only he was not certain he could do so and that he did not have the balance at the specific times the agent requested it.

The policy states that if a conditional binding receipt were issued, then the terms of such conditional binding receipt would be effective. Nothing is said in said receipt about delivery of the policy. Delivery was only required if no conditional binding receipt were issued. The obvious inference, which was for the jury's consideration, is that in the instant case delivery of the policy was not required and the jury so found.

The policy did require the payment of $13.50 on May 18, 1965, but the jury was certainly warranted in finding that the company, by its transmittal letter to the agent along with the policy, waived this requirement since it had received $8 of this amount and allowed the balance of the premium to be paid to it by June 10, 1965. The testimony presented here indicates, and there is no dispute that the company did receive the full initial monthly premium of $13.50

on or about June 8, 1965, that the agent involved advanced the balance to the company. Consequently, we have the situation where the company agreed to insure decedent for $10,000 on receipt of the $13.50 monthly premium. Since the company received the $13.50, the policy was effective and the insured had coverage under its terms until June 18, 1965.

Up until said date there is no testimony that the insured refused to accept the terms of the policy. On or about May 1, 1965, he paid $8 toward the total premium and, therefore, at least until June 18, 1965, he never disavowed his intention to be insured. He merely told the agent on different occasions that he did not have the balance of $5.50 at the times that he was asked for it. This was no indication that he was refusing to be insured. In fact, the agent on his own advanced the $5.50, believing that insured would pay him back this amount. If the insured had flatly stated that he did not want coverage would the agent advance this amount, knowing the insured would not pay him back? We think not. In fact, the agent testified that he thought he would be reimbursed on the following Friday after he paid the $5.50 to the company.

Since the policy was effective on May 18, 1965, the insured was covered under its terms. There is no testimony that he ever disavowed the terms of the policy; consequently, he was definitely covered by its terms. This meant that on June 18, 1965, he owed another monthly premium of $13.50 to the company. Under the policy he had a 31-day grace period in which to pay this second monthly premium and if he did not pay it and died within the 31 days, the company could deduct it from the $10,000 due the beneficiary. Even if, during the 31-day grace period, the insured had flatly told the agent that he was not going to pay any additional premiums, he still would have had coverage for the 31-day period subject to his dying during that

period and having the monthly premium deducted from the face amount of the policy. If he continued to live beyond the 31-day grace period without making his premium payment, then the policy would have lapsed on July 18, 1965, but the insured died on June 23, 1965, during the 31-day grace period. Consequently, the company owes the beneficiary $10,000 less the second monthly premium of $13.50, which is the amount awarded to the beneficiary by the jury.

The company presents a further reason for claiming that it is not indebted to the beneficiary—this reason being based on the Insurance Code of May 17, 1921, P. L. 789, sec. 635, which is set forth as follows:

"No insurance agent, solicitor, or broker, personally or by any other party, shall offer, promise, allow, give, set off, or pay, directly or indirectly, any rebate of, or part of, the premium payable on the policy or on any policy or agent's commission thereon, or earnings, profit, dividends, or other benefit founded, arising, accruing or to accrue thereon or therefrom, or any special advantage in date of policy or age of issue, or any paid employment or contract for services of any kind, or any other valuable consideration or inducement, to or for insurance on any risk in this Commonwealth, now or hereafter to be written, which is not specified in the policy contract of insurance; nor shall any such agent, solicitor, or broker, personally or otherwise, offer, promise, give, option, sell, or purchase any stocks, bonds, securities, or property, or any dividends or profits accruing or to accrue thereon, or other thing of value whatsoever, as inducement to insurance or in connection therewith. Nothing in this section shall be construed to prevent the taking of a bona fide obligation, with legal interest, in payment of any premium."

The Supreme Court in McDowell v. Good Chevrolet-Cadillac, Inc., 397 Pa. 237, 242-43 (1959), said:

"The thrust of the anti-rebate provisions of the statute is against the placement of insurance whereby the insured secures the insurance at a favored rate, regardless of the mode or the manner in which such favored rate is obtained. The court below well stated that 'as is universally stated and recognized, a reduction of cost is the test of whether or not the statute is being violated. . . . ' "

In the instant case the agent advanced the $5.50 to the company believing that he would receive it from the insured on Friday. There is no testimony here to indicate that the agent was attempting to furnish any rebate to the insured or to give him any benefits that other policyholders did not receive.

The money advanced by the agent was in the form of a personal loan, and when advanced by him, his intention was that he would receive it back from the insured. Therefore there was no violation of the statute set forth above. The fact that there was no written contract by the insured to pay it is not vital: Hirsch v. Singer, 86 Pa. Superior Ct. 605 (1926).

For the above reasons the motions for a new trial and for a judgment n.o.v. will be refused.

### ORDER

And now, to wit, this May 26, 1967, after argument, it is ordered, adjudged and decreed that: (1) the rule granted on the 19th day of April, 1966, on defendant's motion for a new trial is discharged and the motion is refused; and (2) the rule granted on April 19, 1966, on defendant's motion for judgment n.o.v. is discharged and the motion is refused.