IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| SCOTT R. BLAKE, | : | No. 103 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 724 CD |
| | : | 2015 dated February 17, 2016 |
| v. | : | Reversing the Order of the State Civil |
| | : | Service Commission at No. 28359 dated |
| | : | April 7, 2015 |
| STATE CIVIL SERVICE COMMISSION, | : | |
| | : | SUBMITTED:  March 3, 2017 |
| Appellant | : | |

## OPINION

**JUSTICE DONOHUE**                                              **DECIDED:  July 25, 2017**

We are tasked with determining whether Appellee, Scott R. Blake ("Blake"), meets the definition of "soldier" as defined in 51 Pa.C.S. § 7101 of the Pennsylvania Military and Veterans Code (the "Veterans' Preference Act" or the "VPA"), 51 Pa.C.S. §§ 7101-7109, which would entitle him to a veterans' preference.  Pennsylvania's veterans' preference includes, inter alia, the addition of ten points to a passing score on a civil service examination for civil service jobs in this Commonwealth, preferences in appointments and hiring, and increases in the calculation of seniority in connection with reductions in force situations.  51 Pa.C.S. §§ 7103, 7104, 7107.  After reviewing the relevant statutory language, we conclude that the General Assembly did not intend to bestow a veterans' preference to someone who was a cadet at a military academy, but never obligated himself to perform, or otherwise undertook, any subsequent military

service. For the reasons that follow, we reverse the decision of the Commonwealth Court.

Blake attended the United States Military Academy at West Point from July 1991 to January 1993. Commission Adjudication Opinion at 2. On his first day, he took the required oath and was sworn in as a cadet. He then completed six to eight weeks of cadet basic training and, in August 1991, was admitted into the Corps of Cadets at West Point. *Id.* at 4. During the three academic semesters he spent at the academy, Blake was not required to pay any tuition. He earned a total of forty-five credits at West Point, but did not graduate. *Id.* His Certificate of Release or Discharge from Active Duty ("DD Form 214") from the United States Department of Defense characterizes his separation from West Point prior to his third year as an honorable discharge. He graduated with a bachelor's degree from the University at Albany, State University of New York, in May 1995.[1] *Id.* at 3.

After leaving West Point, Blake did not perform any subsequent military service, never having accrued any obligation to do so. *Id.* at 5. A cadet who graduates from West Point is obligated to perform commissioned service as a second lieutenant in lieu of repaying tuition. *Id.* A cadet who starts his third year but does not graduate is responsible for repaying tuition and may be required to serve in the regular army at an enlisted rank. *Id.* By leaving after his second year, Blake neither had to repay his tuition nor commit to perform a term of military service (commissioned or enlisted).

---

[1] After West Point, Blake completed sixteen credits at Suffolk County Community College before earning his remaining sixty credits at the University at Albany. The credits he earned at West Point counted toward his civilian bachelor's degree. Commission Adjudication Opinion at 5.

From December 1995 to at least October 2014, Blake was employed by the United States Immigration and Customs Enforcement, or its predecessor agency, the United States Immigration and Naturalization Service. *Id.* at 3.

On May 28, 2014, Blake submitted an application to Appellant, State Civil Service Commission ("Commission" or "CSC")[2] for a "Special Investigator 1" or "Special Investigator 2" position. *Id.* at 2. On the application, he answered "yes" to the question, "Are you claiming a veterans' preference?" and passed the required civil service examination. *Id.*

Chapter 71 of the Veterans' Preference Act provides:

> When any soldier shall take any civil service appointment or promotional examination for a public position under the Commonwealth, or under any political subdivision thereof, he shall be given credit in the manner hereinafter provided; for the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country, as provided in this chapter.

51 Pa.C.S. § 7102(a). For purposes of awarding such credit, the VPA defines "soldier" as:

> A person who served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, during any war or armed conflict in which the United States engaged and who was released from active duty under honorable conditions, other than from periods of active duty for training, or with an honorable discharge from such service, or a person who so served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who

---

[2] Throughout this Opinion, we refer to the adjudicatory branch of the State Civil Service Commission as the "Commission" and, to avoid confusion, we refer to the administrative branch as the "CSC."

has an honorable discharge from such service. Qualifying periods of service during a war or armed conflict, for purposes of this provision, will be designated by the Department of Military and Veterans Affairs.

51 Pa.C.S. § 7101.

In a letter dated June 4, 2014, the CSC informed Blake that he did not qualify for the veterans' preference because his service as a cadet at West Point was not "creditable as 'time in service'." Commission Adjudication Opinion at 5. On June 10, 2014, Blake responded by email that he believed the CSC had made an erroneous determination and cited two federal statutory provisions as evidence that cadet time is considered both "active duty," 38 U.S.C. § 101(21)(D), and "active service," 38 U.S.C. § 101(24)(A). *Id.* at 5-6. Blake noted that his DD Form 214 provides that his "Grade, rate or rank" was "cadet" and that his "net active service this period" was one year and six months, the equivalent of his abbreviated academic career at West Point. Finally, he conceded that his "service is not creditable for commissioned service," but contrasted the commissioned service of an officer with that of an enlisted member of the military, and urged that his service time at West Point equates to the latter. *Id.*

By e-mail dated August 8, 2014, the CSC reiterated its determination that Blake did not qualify for the veterans' preference. The e-mail informed him that 38 U.S.C. § 101 "is relevant to veterans' benefits and is not relevant to Civil Service employment purposes. Time served as a Cadet is not creditable as 'time in service'." *Id.* at 7. The CSC also informed him that he could appeal the agency's decision to the Commission pursuant to section 905.1 of the Civil Service Act. Blake responded on August 13, 2014 that he planned to appeal. *Id.* at 7-8.

The Commission framed the issue before it as whether the CSC had properly determined that Blake was not eligible to receive the same benefits that a qualified "soldier" receives when he or she passes a civil service examination. *Id.* at 1. In testimony before the Commission, Blake took the position that he met the VPA's definition of "soldier" in section 7101, and was "eligible for the veterans' preference because he completed basic training; received an honorable discharge; and, as a West Point cadet, was on 'active duty.'" *Id.* at 11 (citing N.T., 10/22/2014, at 41-43). He relied on the definition of "active duty" found in 10 U.S.C. § 101(d)(1) of the United States Armed Forces title, which provides, for purposes of that title, that "active duty" means "full-time duty in the active military service of the United States. Such term includes … attendance, while in the active military service, at a school designated as a service school[.]" Commission Adjudication Opinion at 11 (quoting 10 U.S.C. § 101(d)(1)).[3]

The CSC, on the other hand, argued that Blake did not meet the definition of "soldier" because he did not perform "active duty" or "military service" at West Point. *Id.* The CSC contended that Blake's time at West Point was akin to "military training" or

---

[3] Before the Commission, Blake also pointed to a federal statutory definition of "Regular Army" which provides that the "Regular Army includes … the cadets of the United Sates Military Academy." Commission Adjudication Opinion at 12 (quoting 10 U.S.C. 3075(b)(2)). He urged that the definition of "active duty for training" set forth in the *Department of Defense Dictionary of Military and Associated Terms* supports his position that he was not merely on "active duty for training" while a cadet at West Point. That definition limits "active duty for training" to "a tour of active duty that is used for training members of the Reserve Component …." *Id.*

"active duty for training," neither of which qualifies an applicant for the preference under section 7101 or Management Directive 580.21.[4] *Id.* at 12.

The Commission found that it was not necessary to resolve the question of whether Blake's cadet service at West Point could be classified as "active duty." *Id.* at 14. The Commission reasoned that regardless of whether Blake's cadet service was "active duty," his particular service lacked a reasonable relation to "the preference of veterans for the proper performance of public duties." *Id.* (citing *Housing Authority of the County of Chester v. State Civil Service Comm'n*, 730 A.2d 935, 948 (Pa. 1999)). In *Housing Authority,* this Court explained that a veterans' preference is not constitutional unless a "'reasonable relation' … exist[s] 'between the basis of [the] preference [in the statute being challenged] and the object to be attained, the preference of veterans for the proper performance of public duties'." *Housing Authority,* 730 A.2d at 948 (quoting *Commonwealth ex rel. Graham v. Schmid,* 3 A.2d 701, 704 (Pa. 1938)). Accordingly, the Commission concluded that applying a veterans' preference to Blake would violate the Pennsylvania Constitution. *Id.*[5]

---

[4] The full title of the management directive at issue is Management Directive 580.21 Amended, *Veterans' Preference on Classified Service Employment Certifications*, dated February 16, 2011. *See* CSC's Exhibit 4. MD 580.21 explains, in relevant part, that the veterans' preference is "given to applicants who pass examinations to positions covered by the CSC in recognition of their military service." *Id.*

[5] Discussing the constitutionality of statutory classifications generally, we have explained that the "prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation." *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000). While the Commission did not cite specific provisions of the Pennsylvania Constitution, *Housing Authority of the County of Chester v. State Civil Service Comm'n,* indicates that principles of due process and equal protection (continued…)

The Commission reasoned that the Commonwealth Court's opinion in *Soberick v. Salisbury Tp. Civil Service Comm'n and Budd A. Frankenfield, III*, 874 A.2d 155 (Pa. Commw. 2005), supported its conclusion. The Commission distinguished Frankenfield's eleven months of active duty in support of Operation Enduring Freedom (Iraq) from Blake's tenure at West Point. Even though Frankenfield had not completed his full eight-year military service commitment with the Marine Corps when he applied for the veterans' preference, the Commonwealth Court upheld the award, indicating that his active duty represented the kind of "significant military service" the General Assembly intended to reward. *Id.* at 158.

Blake appealed and the Commonwealth Court reversed, criticizing the Commission for failing to decide the matter on statutory, non-constitutional, grounds. *Blake v. State Civil Service Comm'n*, No. 724 C.D. 2015 at 1 (Pa. Commw. 2016) (unpublished memorandum). The Commonwealth Court first considered whether Blake's time as a cadet at West Point met the statutory definition of "soldier" in section 7101 of the VPA. Because the General Assembly did not define the term "active duty" in section 7101, the Commonwealth Court explained that it would be guided by the rule of statutory construction set forth in 1 Pa.C.S. § 1921(c)(5), which provides that courts may consider "the former law, if any, including other statutes upon the same or similar subjects" when determining legislative intent. *Id.* at 8. The Commonwealth Court explained that the term "active duty" is defined in title 38 of the United States Code as

(…continued)
(emanating from Pa. Const. art. I, §§ 1, 26) animate the "reasonable relation" standard. *See Housing Authority*, 730 A.2d at 948) (citing *Hoffman v. Twship. Of Whitehall*, 677 A.2d 1200 (Pa. 1996)); *accord Albert*, 758 A.2d at 1151 (discussing equal protection under Pa. Const. art. I, §§ 1, 26 and U.S. Const. amend. XIV).

including – for purposes of defining a "veteran" eligible for certain federal benefits – someone who served "as a cadet at the United States Military, Air Force, or Coast Guard Academy, or as a midshipman at the United States Naval Academy." *Id.* at 8-9 (quoting 38 U.S.C. §101(21)(D)). Because Blake was a cadet at West Point, the Commonwealth Court determined that he met the foregoing federal definition of "active duty" and, as a result, also met the definition of "soldier" in 51 Pa.C.S. § 7101. *Id.* at 11.[6]

Despite acknowledging that the purpose of the Veterans' Preference Act is to reward a soldier "for the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country," 51 Pa.C.S. §7102(a), the Commonwealth Court decided that this language did not impose a requirement that soldiers must have both undergone training and performed military service to be eligible. *Id.* Instead, the court concluded, by reference to the federal definition, that "the language of [section 7101] … stands alone to support the conclusion that Blake was a soldier when he attended West Point." *Id.*[7]

---

[6] The definition of "veteran" in 5 U.S.C. § 2108 includes, among others, "an individual who … served on active duty as defined by section 101(21) of title 38 in the armed forces during the period beginning on August 2, 1990, and ending on January 2, 1992." 5 U.S.C. § 2108(1)(C). The Commonwealth Court apparently concluded that Blake met this federal definition as well, and found it relevant (for reasons unstated) that he would therefore qualify for federal veterans' benefits. *See Blake*, No. 724 C.D. 2015 at 9.

[7] The Commonwealth Court also set forth 38 U.S.C. § 101's definition of "active duty for training," finding it inapplicable to Blake. As defined under federal law, "active duty for training" is a term applicable only to individuals in the Reserves, Reserve Corps of the Public Health Service, National Guard or Air National Guard of any State, or Senior Reserve Officers' Training Corps. 38 U.S.C. § 101(22). As to its meaning in the context of section 7101, both Blake and the CSC appear to agree that "active duty for training" (continued…)

Finally, the Commonwealth Court disagreed with the Commission's constitutional analysis. According to the Commonwealth Court, this Court's use of the "reasonable relation" test in the area of the Veterans' Preference Act has been limited to facial constitutional challenges to certain preference provisions, and is misplaced in the context of an "as applied" challenge, where the validity of the provision itself is undisputed and the challenge relates instead to whether the provision may be constitutionally applied to an individual applicant. *Id.* at 11-13.

On appeal to this Court, the CSC raises two issues: (1) whether the Commonwealth Court erred by construing the intent of the General Assembly with reference to terms contained in federal legislation; and (2) whether the Commonwealth Court erred in holding that the "reasonable relation" standard is to be applied only in the context of facial constitutional challenges to veterans' preference provisions. We need not reach the second issue, as we agree with the Commonwealth Court that the case may be decided on non-constitutional grounds. *Commonwealth v. Janssen Pharmaceutical, Inc.*, 8 A.3d 267, 271 (Pa. 2010) (holding that constitutional questions should be avoided when resolution of the case based on alternative, non-constitutional grounds is possible). We disagree, however, with the Commonwealth Court's resolution of the case on statutory grounds, including its decision to import a federal definition to interpret section 7101.

Whether Blake is a "soldier" pursuant to the definition of that term in section 7101 requires us to engage in statutory interpretation. Because statutory interpretation is a

---

(…continued)
is a training status limited to reservists and members of the National Guard. *See* Blake's Brief at 11-12; CSC's Brief at 17, 25-28.

question of law, our standard of review is de novo and our scope of review is plenary. *Ford v. Am. States Ins. Co.*, 154 A.3d 237, 244 (Pa. 2017). The Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991, recognizes that the objective of all interpretation is to ascertain and effectuate the General Assembly's intent. 1 Pa.C.S. § 1921(a). Every statute shall be construed, if possible, to give effect to all of its provisions. *Id.* A statute's plain language generally provides the best indication of legislative intent. 1 Pa.C.S. § 1921(b). However, if the words are not explicit or free from ambiguity,

> the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). In all cases, we read statutory words with reference to the context in which they appear, *see A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016), and we operate under the presumption that the General Assembly did not intend a result that is absurd or unreasonable. 1 Pa.S.C § 1922.

The statutory definition of "soldier" is ambiguous because it contains several undefined terms and phrases, including "active duty" and "served or hereafter serves in

the armed forces of the United States." *Cf. 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 174 (Pa. 2005). The parties disagree as to which portions of section 7101 apply to Blake and, to the extent they are applicable, about the meanings of the undefined terms. Blake argues that he is a "soldier" because he was on "active duty" as a cadet at West Point. He supports the Commonwealth Court's decision to import a federal statutory definition of "active duty" to clarify the meaning of this term in section 7101. The CSC, alternatively, argues that it is irrelevant whether Blake was on "active duty," because the portion of section 7101 in which that term appears does not apply to him. CSC's Brief at 17. The agency contends, moreover, that the portion of section 7101 relevant to Blake is whether he "served … in the armed forces of the United States," and insists that he did not, as he neither incurred nor completed a term of military service. *Id.* at 29-32.

We agree with the CSC that the Commonwealth Court erred in relying on a statutory definition from federal legislation to ascertain the General Assembly's intent with respect to section 7101. Section 1921(c)(5) authorizes consideration of "the former law, if any, including other statutes upon the same or similar subjects." 1 Pa.C.S. 1921(c)(5). The federal statute at issue, 38 U.S.C. § 101(21)(D), defines the term "active duty" for purposes of granting a preference to "veterans" in federal employment. 38 U.S.C. § 101(21)(D). It is not a "former law" with respect to Pennsylvania's VPA, as there is no indication that the VPA was modeled after, or based upon, any language in the federal statute.[8] Moreover, the nomenclature of the federal law is in many respects

---

[8] Section 103 of the Pennsylvania Military and Veterans Code provides: "It is the intent of this title that it shall be in conformity with all acts and regulations of the United States (continued…)

different than in section 7101. For example, section 7101 makes Pennsylvania's

veterans' preference available to "soldiers," while federal law refers to "veterans" who

---

(…continued)

affecting the same subjects, and all provisions of this title shall be construed to effectuate this purpose." 51 Pa.C.S. § 103. The Commonwealth Court, however, did not cite section 103 in support of its approach in the case at bar, and we do not view section 103 as sanctioning the use of federally defined terms to ascertain the General Assembly's intent regarding who qualifies as a "soldier" eligible for a veterans' preference in Pennsylvania civil service jobs. In our view, the Commonwealth Court in *Herskovitz* ably explained why section 103 does not authorize reliance on federal law as an interpretative tool:

> Whereas the [present Military] Code is a substantial reenactment of The Military Code of 1949, formerly 51 P.S. §§ 1-101—1-1202, the preference provisions of Chapter 71 are derived from a separate and distinct statute enacted in 1945, Act of May 22, 1945, P.L. 837, formerly 51 P.S. §§ 492.1—492.8, repealed by Section 2 of the Act of August 1, 1975, P.L. 233. Section 103 of the [Pennsylvania Military] Code is taken verbatim from Section 102 of the Military Code of 1949, formerly 51 P.S. § 1-102; it was **not** a part of the Act of 1945 dealing with veterans' preference. It was not until 1975 that the statutory provisions relating to veterans' preference were incorporated as part of the present [Pennsylvania] Military Code.
>
> Furthermore, the purpose of Section 102 as it applied to other military matters, can be ascertained quite apart from veterans' preference. Enlistment standards, uniforms, honorable discharge requirements are just a few of many areas where, for the sake of uniformity, state laws pertaining to the military must conform with federal standards.

*Herskovitz,* 534 A.2d at 163 (footnote omitted). In addition to the foregoing, the *Herskovitz* Court relied upon the language of 51 Pa.C.S. § 7109 to conclude that "that Section 103 does not require that the provisions of the [present Military] Code must conform with and be interpreted as a part of the federal legislation in the area of veterans' preference." *Id.* Section 7109 provides: "This chapter shall be construed as being the exclusive law applying to the Commonwealth, and its political subdivisions, in giving preference to soldiers in appointment or promotion to, or retention in, public position or on public works." 51 Pa.C.S. § 7109. In the instant matter, the CSC argues similarly that Section 7109 bars consideration of federal statutory definitions. *See* CSC's Brief at 16, 20.

are "preference eligible." *Herskovitz v. State Civil Service Comm'n,* 534 A.2d 160, 163 (Pa. Cmwlth. 1987). Further, the scope of availability for a veterans' preference is different, as in Pennsylvania it is available to someone meeting the definition of "soldier" in section 7101, while the definition of "preference eligible" under federal law includes disabled veterans, certain family members of disabled veterans, those whose service meet the definition of "veteran,"[9] and certain family members of veterans.[10] *See* Brian Torresi, *Operation Rewarding Sacrifice: A Proposal to Amend the Definition of "Veteran" in Title 5 to Fully Effectuate the Purposes of Veterans' Preference*, 110 Penn St. L. Rev. 209, 231 (2005) (citing 5 U.S.C. § 2108(3)). These significant differences strongly militate against the use of federal definitions to interpret the Pennsylvania statute.

---

[9] The definition of "veteran" under federal law is also much different than the definition of "soldier" under section 7101. A "veteran" includes someone who served on active duty in the armed forces during a war, during the period from April 28, 1952 to July 1, 1955, or in a campaign or expedition for which a campaign medal has been authorized. A "veteran" is also someone who served on active duty for more than 180 consecutive days after January 31, 1955 and before October 15, 1976, or who served on active duty with no time requirement during the period from August 2, 1990, until January 2, 1992. *See* Brian Torresi, *Operation Rewarding Sacrifice: A Proposal to Amend the Definition of "Veteran" in Title 5 to Fully Effectuate the Purposes of Veterans' Preference*, 110 Penn St. L. Rev. 209, 231 (2005) (citing 5 U.S.C. § 2108(1)).

In his brief filed with this Court, Blake concedes that he would not qualify for a veterans' preference under the current federal framework, despite meeting the federal definition for "active duty." *See* Blake's Brief at 13 (explaining that a separate federal law contains a "service requirement of twenty-four months" for individuals, like Blake, who were on active duty during the Persian Gulf War). Blake appears to be referring to 38 U.S.C. § 5303A, which provides, in relevant part, that "any requirements for eligibility for or entitlement to any benefit under this title or any other law administered by the Secretary that are based on the length of active duty served by a person who initially enters such service after September 7, 1980" are amended to require either "24 months of continuous active duty" or "the full period for which such person was called or ordered to active duty," except under certain enumerated circumstances. 38 U.S.C.A. § 5303A.

[10] Under Pennsylvania law, preferences are available to the spouses of deceased or disabled soldiers. 51 Pa. C.S. § 7108.

Instead, the "former law" worthy of our consideration here is the text of section 7101 before it was amended in 2004. The pre-2004 version of the law provided as follows:

> As used in this chapter, "soldier" means a person who served in the armed forces of the United States, or in any women's organization officially connected therewith, during any war or armed conflict in which the United States engaged, or who so served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service.

51 Pa. C.S. § 7101 (1975, *amended* 2004). Under this definition, a person qualified as a "soldier" if he or she (1) served in the armed forces of the United States (or a connected women's organization) after July 27, 1953 (the date of the armistice ending the Korean War), and was honorably discharged from that service, or (2) served before July 27, 1953 during a war or armed conflict in which the United States engaged, and was honorably discharged from that service. Under the pre-amendment version of section 7101, anyone honorably discharged from service after the end of the Korean War qualified for a veterans' preference, regardless of whether that service took place during a war or armed conflict.

The pre-amendment version of section 7101 did not include the term "active duty." Two Commonwealth Court decisions necessitated the amendment to add it. First, in its 1987 decision in *Herskovitz*, the Commonwealth Court interpreted the definition of "soldier" to include members of the Pennsylvania National Guard and United States Reserves. *Herskovitz*, 534 A.2d at 160-62. The three petitioners had completed their guard or reservist training, and had also completed their full military

service obligations of five to six years prior to being honorably discharged. *Id.* at 161. The Commonwealth Court decided that the part-time nature of their service did not disqualify them from being "soldiers" under section 7101 (pre-amendment). *Id.* at 162. Citing the legislative intent set forth in section 7102(a) of the VPA, the court reasoned that voluntarily enlisting in the National Guard or Reserves demonstrates "the same public-spirited service for the preservation of our country as those who have volunteered or may have been drafted into full-time active service." *Id.* at 161. While recognizing that "the actual continuous time of service is different for those who are 'regular army'," the Commonwealth Court concluded that members of the Pennsylvania National Guard and United States Reserves experience "the same kinds of disruption in normal civilian life … albeit on a lesser scale." *Id.*

Second, in *Sicuro v. City of Pittsburgh*, 684 A.2d 232 (Pa. Commw. 1996), the Commonwealth Court limited the application of *Herskovitz* to members of the Pennsylvania National Guard or United States Reserves who had completed their initial service commitment before seeking the preference. *Id.* at 237. In *Sicuro*, the applicants had been discharged from their reserve duty training program but had not yet joined the reserves or completed their initial service commitment. *Id.* at 234. The *Sicuro* court explained "the purpose of the Act is to reward qualified veterans for their service to this country. … Completion of their **training** does not equate to completion of their **service** for purposes of obtaining preference points." *Id. at* 236 (emphasis in original). According to the Commonwealth Court, extending the veterans' preference to those who have not completed an initial service commitment "diminish[es] opportunities for

individuals who have completed their full, significant contributions to the military[.]" *Id.* at 237.

The General Assembly amended section 7101 in 2004 to resolve a perceived unfairness to certain guard and reserve members. In particular, guard and reserve members who were called to active duty in places like Iraq or Afghanistan, and who were then released from that active duty assignment, were not eligible for a veterans' preference because they had not, as required by *Sicuro*, completed the entirety of their initial service commitments. The amendment's legislative history makes clear that it was enacted to bring within the ambit of section 7101 those members of the Pennsylvania National Guard or United States Reserves who returned from active duty during a war or armed conflict, without first requiring them to complete their initial service obligation. *See* 1 Pa.S.C. § 1921(c)(7); Pa. L. Journal, 188th Gen. Assemb., No. 15, Reg. Sess., 304 (2004) (introducing House Bill 2055 as "an Act amending Title 51 (Military Affairs) of the Pennsylvania Consolidated Statutes, further defining 'soldier'"). During consideration of HB 2055 on the floor of the House, Representative Thomas Tigue explained that the bill was

> an important bill for all of our National Guard and Reserve troops who are in harm's way or have been in harm's way and have returned. This bill will allow them to receive the benefits to which they should be entitled. Under the current law, our current National Guard's members and reservists who have served on active duty in Iraq and Afghanistan and on ships at sea and in combat areas do not qualify … for veterans' [preference] …. What this bill does is to bring them up on an equal footing, if you will, with those who are on active duty who served in the same places. In fact, some reservists have served more time than the active duty forces.

*Id.* (statement of Rep. Tigue). Representative Thomas Yewcic, the bill's prime sponsor, further noted:

> Last year a member of the Pennsylvania Guard who was deployed in Afghanistan and another in Iraq returned home from military service during their first enlistment period and [was] denied recognition … for veterans' preference benefits in the State of Pennsylvania. HB 2055 addresses that issue to allow the Pennsylvania Department of Military and Veterans Affairs to designate the time periods in which our guardsmen who are serving our country are entitled to these benefits.

*Id.* (statement of Rep. Yewcic).[11]

Accordingly, the amendment added the following bolded language to create the current text of section 7101:

> a person who served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, during any war or armed conflict in which the United States engaged **and who was released from active duty under honorable conditions, other than from periods of active duty for training, or with an honorable discharge from such service, or a person** who so served or hereafter serves in the armed forces of the United States, or in any women's organization officially connected therewith, since July 27, 1953, including service in Vietnam, and who has an honorable discharge from such service. **Qualifying periods of service during a war or armed conflict, for purposes of this provision, will be designated by the Department of Military and Veterans Affairs.**

51 Pa.C.S. § 7101 (emphasis added).

---

[11] We recognize that statements made by individual legislators are not dispositive of the intent of the General Assembly as a whole, but may nonetheless be informative and instructive in our analysis. *See Bd. of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 625 (Pa. 2010).

Based upon the amendment's legislative history and the specific new language it added, it is clear that the amendment granted "soldier" status to a new category of individuals, namely members of the Pennsylvania National Guard or United States Reserves who were called to active duty (often serving overseas in active combat zones) and are thereafter released under honorable conditions from such duty, even if they have not yet completed their total service commitment to the military through honorable discharge. Prior to the 2004 amendment, these individuals, in accordance with the Commonwealth Court's decision in *Sicuro*, were required to complete their initial service commitment before becoming eligible for a veterans' preference.

Unlike the federal statutory definition of "active duty" on which Blake heavily relies, the "active duty" language in section 7101 (added via the 2004 amendment) was intended to capture members of the Pennsylvania National Guard or United States Reserves called to active duty. As a result, the "active duty" language in section 7101 does not apply to Blake. Blake is not and never was a reservist or guard member and was never called to active duty during a time of war or armed conflict.

Therefore, whether Blake is a "soldier" depends instead upon whether he is a person who "so served or hereafter serves in the armed forces of the United States … since July 27, 1953 … and who has an honorable discharge from such service." 51 Pa.C.S. § 7101. The terms "served" and "serves" are not defined in the VPA. In section 7102, however, the General Assembly set forth its reasoning for granting veterans' preferences under the VPA. 51 Pa.C.S. § 7102(a); 1 Pa.C.S. § 1921(c)(4), (6). Preference credits are to be awarded to a soldier "for the discipline and experience represented by his military training **and** for the loyalty and public spirit demonstrated by

his service for the preservation of his country." 51 Pa.C.S. § 7102(a) (emphasis added). Section 7102 evinces the General Assembly's intent to confer a veterans' preference upon individuals who have **both** undergone military training and, thereafter, demonstrated loyalty and public-spirit by their service to the country. 51 Pa.C.S. § 7102(a). Individuals who merely trained to serve their country while a student at military academy, but who neither committed themselves to a term of service nor followed through with that service commitment, has done little "for the preservation of his country," let alone by way of demonstrating "loyalty and public-spirit." *Id.*

Blake was sworn in as a cadet on his first day at West Point and began cadet basic training immediately thereafter. Basic training lasted six to eight weeks, ending in August 1991. Following basic training, Blake obtained forty five academic credits over the course of his three semesters at West Point, all of which ultimately counted toward his civilian bachelor's degree, which he received from University at Albany a few years after leaving West Point. Because he left West Point after only eighteen months, Blake never incurred any military service obligation. Such a service obligation would have accrued at the start of his third year if he had remained at the academy. Had he remained at West Point through the start of his third year but failed to graduate, he would have been obligated to serve at an enlisted rank and/or repay his tuition. Had he graduated, he would have been obligated to perform his service as a commissioned officer in lieu of repaying his tuition.

Because he left before a service obligation accrued, Blake never obligated himself to serve his country, either as a commissioned officer or at an enlisted rank. In fact, "for the preservation of his country," he never undertook to perform any military

service following his eighteen months of training at West Point. Even if, as Blake contends, the Army might have counted his time at West Point in determining his enlisted rank for service in the Army if he had enlisted, Commission Adjudication Opinion at 6, the fact remains that he did not do so, either voluntarily or otherwise. In addition, as previously stated, Blake never served in the Pennsylvania National Guard or United States Reserves.

While conceding these points, Blake nonetheless testified before the Commission that, based on the definition of "active duty" in 38 U.S.C. § 101(21)(D), anyone who takes the cadet oath on his first day at the academy is a "soldier" from that moment forward. *See* N.T, 10/22/2014, at 31-32. Based upon Blake's proposed interpretation, even a cadet who never completed basic training would be eligible for the veterans' preference, so long as he or met the remaining statutory criteria. On the other hand, members of the Pennsylvania National Guard or United States Reserves in their first term of service, who have not been called up for active duty, would be ineligible. *Sicuro*, 684 A.2d at 234. We find this to be an absurd result, and one that our General Assembly clearly did not intend. 1 Pa.C.S. § 1922(1).

Pennsylvania has had a veterans' preference statute dating back to 1887. *Preferential Treatment of War Veterans, No. 2*, 38 Pa. D. & C. 129, 131 (1940). It exists "as a form of consideration for society's recognition that (1) veterans generally bring highly valued skills conducive to the better performance of public employment duties, including discipline, experience and service; (2) veterans suffer from a comparative disadvantage relative to non-veterans because of their exclusion from the labor market during their period of military service to the nation; and (3) veterans have rendered the

greatest service a citizen can perform namely, the defense of our liberty." *Brickhouse v. Spring-Ford Area Sch. Dist.*, 656 A.2d 483, 490 (Pa. 1995) (Castille, J., dissenting) (citing *Schmid*, 3 A.2d at 704). Blake went to college. He did not serve in the armed forces of the United States, and thus he is not a "soldier" as that term is defined in 51 Pa.C.S. § 7101. He is not entitled to receive a veterans' preference when applying for civil service jobs in this Commonwealth.

The order of the Commonwealth Court is reversed.

Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.